(38 South. 200.)

No. 15,315.

A. CUSIMANO & CO. v. OLIVE OIL IMPORTING CO., Limited.

(March 13, 1905.)

TRADE-MARK—INFRINGEMENT—DAMAGES.

1. Two trade-marks are the same in legal contemplation if the resemblance is such as to deceive an ordinary purchaser giving such attention to the same as such a purchaser usually gives, and to cause him to purchase the one supposing it to be the other. Although differences may exist between two trade-marks, there is an unlawful infringement where the general appearance of the package is well calculated to mislead and deceive the unwary purchaser.

2. Act No. 49, p. 56, of 1898, makes it a misdemeanor to counterfeit or imitate a trademark, and authorizes the imposition of such damages as the court may deem "just and reasonable," in addition to the payment to plaintiff of all profits derived by defendant from the manufacture, use, or sale of the article. Hence the court may award damages beyond the actual pecuniary loss shown by the evidence.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by A. Cusimano & Co. against the Olive Oil Importing Company, Limited.

Judgment for plaintiffs, and defendant appeals. Modified.

Dart & Kernan, for appellant. William R. Stringfellow and Benjamin Rice Forman, for appellees.

LAND, J. This suit was instituted to recover damages for the alleged fraudulent and illegal use by defendant of a certain trade-mark for olive oil owned and used by plaintiffs in their business, and known as "Chicken Cock," and the placing on the market for sale a spurious and inferior article of olive oil bearing an imitation or counterfeit of such trade-mark.

Plaintiffs alleged their use of said trade-mark for 28 years, and that it has a well-known reputation and sale throughout the city of New Orleans and various states of the Union.

Plaintiffs further alleged that on January 21, 1903, said trade-mark was registered with the Secretary of State, as required by Act No. 49, p. 56, of 1898.

The petition charged that during the year 1903 defendant was engaged in placing upon the market and in selling a spurious article of so-called olive oil, composed of 75 per cent. of cotton seed oil and 25 per cent. of olive oil, purporting to be of the same quality and description as that of plaintiffs, and placed in cans bearing a counterfeit fac-simile of the trade-mark "Chicken Cock" belonging to plaintiffs.

The petition alleged that during the year 1903, and specially during the months of June, July, and August, defendant sold a large amount of such spurious oil bearing a fac simile and counterfeit of plaintiffs' trade-mark, to their damage and injury in the sum of $2,000 on loss of sales and in profits made by defendant, and in the further sum of $3,000 damages for the placing on the market of such spurious imitation and inferior quality of oil bearing a counterfeit trade-mark of plaintiffs'.

The prayer of the petition was for judgment against defendant for $5,000 damages.

The original petition was filed on August 20, 1903, and on April 29, 1904, plaintiff filed an amended and supplemental petition, in which it was represented that since the filing of the suit the defendant had continued to sell large quantities of the spurious oil in cans bearing an imitation of plaintiff's trade-mark, as described and set forth in the original petition, and that defendant had on hand a large number of such cans, which it threatened to fill with adulterated oil, and put on the market, to the damage and injury of plaintiffs in the sum of $5,000.

Wherefore plaintiffs prayed for judgment for said additional sum, and perpetually enjoining and restraining defendant from selling or offering to sell any oil whatever in cans or packages bearing the picture of a chicken cock or rooster, or called "Chicken Cock" or "Rooster" oil, and ordering that all such cans in possession of defendant be delivered to the sheriff to be destroyed.

For answer to the original and supplemental petitions the defendant pleaded the general issue.

There was judgment in favor of the plaintiff for $300 damages and for an injunction as prayed for, and for the delivery of all cans in possession of defendant and bearing the picture of a "chicken cock" or "rooster" to the sheriff for the purpose of defacement.

Defendant appealed, and plaintiff has joined therein, praying for an increase of the amount awarded by the judgment of the court a qua.

The ownership, use for many years, and the registry of the trade-mark, as alleged in the petition, are shown by the evidence.

Plaintiff's trade-mark, as registered, consists of a representation of a chicken cock standing under the branch of an olive tree, with the words "Etra Puro," and the words "Olio D'Oliva" placed above, and the words "Trade-Mark," and the words "E Cusimano

& Co. Palermo, Italy," "resting under the fac simile."

Act No. 49, p. 56, of 1898, has for its object the protection of labels, trade-marks, etc., adopted by any person or association for the purpose of designating, making known, or distinguishing any goods, wares, merchandise, or other products of labor as having been made, manufactured, produced, prepared, packed, or put on sale by such person or association.

The act makes it a misdemeanor to counterfeit or imitate such labels, trade-marks, etc., or to use, sell, offer for sale, or in any way utter or circulate any such counterfeit or imitation.

Section 5 (page 58) of the same act reads as follows:

"Every such person, association adopting or using a label, trade mark," etc., "may proceed by suit to enjoin the manufacture, use, display or sale of any counterfeits or imitations thereof, and all courts of competent jurisdiction shall grant injunctions to restrain such manufacture, use, display or sale, and may award the complainant in any such suit damages resulting from such manufacture, use, sale or display as may be by the said court deemed just and reasonable, and shall require the defendants to pay to such person, association or union all profits derived from such wrongful manufacture, use, display, or sale, and such court shall also order that all such counterfeits or imitations in the possession or under the control of any defendant in such cause be delivered to an officer of the court or to the complainant to be destroyed."

The first question to be considered is whether the label or trade-mark used by defendant is a "colorable imitation" of plaintiffs' trade-mark, so that the public "may be deceived or misled into the purchase of the productions of the one supposing them to be those of the other." Wolfe v. Barnett & Lion, 24 La. Ann. 99, 13 Am. Rep. 111. In McLean v. Fleming, 96 U. S. 256, 24 L. Ed. 828, the court said:

"Two trade-marks are undoubtedly the same, in legal contemplation, if the resemblance is such as to deceive an ordinary purchaser giving such attention to the same as such a purchaser usually gives, and to cause him to purchase the one supposing it to be the other."

While differences may exist between two labels or trade-marks, there is an infringement where "the general appearance of the package is well calculated to mislead and deceive the unwary." Id.

The chicken cock is the conspicuous and distinguishing characteristic of plaintiff's trade-mark. This label has been known to the trade and to the public for many years, and the rooster has become associated with plaintiff's name and business as an importer of pure olive oil.

Defendant's label has for its central figure the picture of a "rooster" standing on the body of his dead adversary. The standing "rooster" is the conspicuous feature. The words "Extra Puro" appear prominently on the sides of the can. On the face above the rooster appear, first, the word "Victoria," and immediately beneath, the words "Virgine Olio D'Olive." There are other minor differences, which need not be detailed. We, after viewing the two trade-marks, concur in the conclusion of the trial judge that, despite all differences, the general appearance of defendant's labels was well calculated to deceive and mislead the ordinary purchaser of "rooster oil." The chicken cock having been appropriated by plaintiffs as their registered trade-mark, it seems self-evident that the use of a chicken cock as a trade-mark for the sale of the same kind of products is an infringement of plaintiffs' rights under the statute. Defendant's mixture consisted of 60 per cent. of cotton-seed oil, and defendant endeavored to put it on the market as the extra pure product of olives, and the better to accomplish that purpose used the picture of a rooster and descriptive words, which had been appropriated by plaintiffs as a trade-mark for many years.

The next question is as to the quantum of damages. The judge a quo condemned defendant to pay $300. We do not know on what basis this amount was allowed. De-

fendant sold no oil under the rooster label prior to the institution of the present suit, but did sell 146½ cases, or 1,758 gallons, pending the litigation. The sum of $300 will not cover the profits of sale at 20 cents per gallon. Plaintiffs testify that their usual profit was 25 cents per gallon. It would therefore seem that nothing was allowed for damages to plaintiffs' business or reputation by reason of the infringement of their trade-mark. While one of the plaintiffs and their bookkeeper testified to a great falling off in sales of oil before and after the date of the institution of the suit, and while the diminution in sales may have been caused to some extent by the infringement complained of, the evidence is not sufficiently certain to enable us to render a judgment for any specific amount of damages for loss of sales alleged to have been sustained. But plaintiffs were put to trouble and expense in the vindication of their rights, and the infringement of their trade-mark had a tendency to injuriously affect their reputation and business. The statute provides that damages in such cases may be fixed in such amount as the court may deem "just and reasonable," and that defendant, moreover, shall be condemned to account for all profits realized. The statute makes the infringement of a trade-mark a misdemeanor punishable by fine or imprisonment. Considering that the provisions of the act leave the quantum of damages largely to the discretion of the court, and make the infringement of a trade-mark a criminal offense, we are of opinion that the court in such cases is not restricted to the actual damages proven. Civ. Code, art. 1934. We consider that the award of $300 made by the court a qua is inadequate from any point of view, and that it should be increased to the amount of $800.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by increasing the amount thereof from $300 to $800, and that as thus amended said judgment be affirmed; defendant and appellant to pay the costs of appeal.