(49 South. 730.)

No. 17,398.

NEW ORLEANS COFFEE CO., Limited, v. AMERICAN COFFEE CO. of NEW ORLEANS, Limited.

(June 7, 1909.)

1. TRADE-MARKS AND TRADE-NAMES (§ 66*)—OFFENSES—DAMAGE.

Although a label was made up by defendant with the view of imitating part of the combination in matter of plaintiff's trade-mark, damages will not be allowed unless it is proven in what respect plaintiff has been damaged. 46 Cent. Dig. p. 75, § 58.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 66.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 65*)—INFRINGEMENT—DECEPTION OF PUBLIC.

The ordinary purchaser was not deceived to the extent of buying defendant's goods when it was the intention to buy plaintiff's.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 64; Dec. Dig. § 65.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 60*)—INFRINGEMENT—DECEPTION OF PUBLIC.

The color of the package does not enter into the combination adopted for the trade.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 73, 74; Dec. Dig. § 60.*]

4. INFRINGEMENT OF TRADE-MARK.

Part of the trade-mark was imitated by defendant and part was not.

Taken as a whole, defendant's label was not a deception practiced on plaintiff's. It never misled any one. The packages of plaintiff were easily distinguishable from those of defendant.

5. TRADE-MARKS AND TRADE-NAMES (§§ 85, 86*) — ACTIONS — DEFENSES — LACHES—INJUNCTION.

Trade-mark not used in accordance with its meaning has no equity to sustain a suit.

Right to damages or to an injunction is lost by long delay.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 94, 95; Dec. Dig. §§ 85, 86.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George Henry Théard, Judge.

Action by the New Orleans Coffee Company, Limited, against the American Coffee Company of New Orleans, Limited. Judgment for defendant, and plaintiff appeals. Affirmed.

Denègre & Blair and Henry Hansell Chaffe, for appellant. Buck, Walshe & Buck, for appellee.

BREAUX, C. J. The plaintiff company and the defendant are competitors in the business of selling coffee. Each has a factory in which the coffee is roasted, ground, and packed for sale. They are each well known. Each advertises extensively.

Plaintiff adopted a trade-mark and label in the year 1890. The trade-mark and label was at first printed and attached to the can in which it packed and sold its coffee. It sought to assure its customers by the following: That "every drop is a drop of comfort," which was printed on its label, and also that its coffee was the French Market Java Blend. Its vignette impressed upon the label was a fac simile of the French market.

Later these words and other words of advertisement were lithographed on its tin cans, and plaintiff dispensed with the label card entirely.

The value which plaintiff places upon its trade-mark and label is some $10,000.

This trade-mark was registered in Washington in the year 1891, and again in 1906.

A sharp competition in business between plaintiff and defendant gave rise to differences. Defendant's activity in advertising its coffee is objected to by plaintiff, in that defendant has adopted a label, which is in some respects an imitation of that of plaintiff. Fraud is charged, and, further, that defendant practiced deception in producing its coffee, and that this deception is very much to the prejudice of plaintiff. Plaintiff specially charges: That defendant has reaped a profit by the fraud and deception, and that, if it had not been for the fraud and deception of the defendant, it, plaintiff, would have realized profits and returns larger than it has in its business.

That defendant is engaged in imposing upon the public by leading it to think that the French Market coffee prepared by plaintiff (a well-known brand) is defendant's coffee. In other words, that defendant sells its own coffee under the disguise of plaintiff's advertisement. That the public, not knowing the difference, and thinking that they are buying the French Market brand of coffee, buy its (defendant's) brand, which brand differs little from that of plaintiff as it contends.

Plaintiff desires to have the books of defendant examined, and to compel the latter to account for all sales and profits realized under the methods mentioned.

The unwarranted competition of defendant, according to plaintiff's complaint, has caused a loss to it of $10,000. Plaintiff's complaint also is that the sale of an inferior article has had a damaging effect upon the sale of its superior article.

Plaintiff asked that the defendant be enjoined and for judgment in the sum of $20,000 against defendant.

These claims of plaintiff are met by the defendant by the general issue. It also avers: That its labels are not an infringement on the plaintiff's right, as they are easily distinguishable from the labels and trade-mark of plaintiff. Defendant in a measure reconvenes against the plaintiff on the ground that plaintiff's label and trade-mark showed an imposition upon the public of which defendant has a right to complain, in that it advertised that its coffee was a "Java Blend," when it was not. That there was not the least Java in the can it offered for sale. That, instead of being a Java Blend, it was an inferior article of coffee and chicory in the proportion of 75 per cent. of the former to 25 per cent. of the latter in each can. The defendant further states that the package in which plaintiff sold its coffee purported to contain 4 pounds, while in reality it contained only 3½ pounds, and thereby accuses plaintiff of resorting to untrue weights. Defendant urged laches on the part of plaintiff, in that it has not timely protested against its alleged dealings.

Plaintiff prepares its coffee products for market by machinery, and has expended considerable sums in establishing its business. Being the first born by over ten years, it looked, doubtless, with special concern upon the organization of defendant company some four, five or six years ago.

One of the former employés of plaintiff, well informed regarding the business of the plaintiff company, left it, and became vice president of the defendant company.

It became necessary for the defendant also to have a label, also a trade-mark. The vice president of defendant company who was formerly in the employ of plaintiff directed the printer how to print the label. It was afterwards lithographed on the cans; that is, both the plaintiff and defendant adopted the lithograph process, and each reproduced its original label and had

it lithographed on the cans. Defendant devised words, symbols, and mottoes for the label. In place of plaintiff's short and pithy phrase copied above, it adopted another which reads as follows: "Every cup's a cup of Joy."

There is some similarity in the construction of the two phrases, and evidently the first suggested the second.

There are other points of some similarity between the labels, and there are points of decided dissimilarity.

The cans are cylindrical and painted red.

We will here state that similarity in shape of cans and their color (red) will not sustain the conclusion that a trade-mark or label was selected to accomplish a fraudulent purpose. The color of the can, independently of the construction of the label, is not an element of importance in determining whether or not there was prejudicial imitation. Lafean v. Weeks, 177 Pa. 412, 35 Atl. 693, 34 L. R. A. 172.

Frequently such cans are painted red for merchants and manufacturers who sell their goods in cans.

The vignettes are not very similar. The large "French Opera," taken for the vignette of defendant, where, as stated by plaintiff, no coffee is sold, is not similar to the one story low building known as the "French Market," where coffee is sold.

Two of the witnesses for the defense testified that a widow sometimes retailed coffee at the "French Opera" (doubtless agreeably flavored coffee). They do not state whether it was Rio, Java, or Mocha. The word "French" as used is general and affords no good ground for complaint. But, even without the sale of coffee at the "French Opera," defendant could select it as a fit picture for its label. It was not an illegal interference with plaintiff's trademark or label.

Furthermore, it does not appear that plaintiff was damaged in its business. Damages are not allowable unless it is proven that a defendant has so acted as to damage his competitor.

Again, the right to an injunction is not evident. The acts complained of are not proven to have been of such a nature as to justify a permanent injunction. The misrepresentation charged presents no important issue of the case.

The preponderance of the testimony is that the "French Market" label of the plaintiff and the "French Opera" label of the defendant were well known by the public as distinct and independent labels.

No one was ever imposed upon. The truth of the matter is that, while there was some similarity between the two cans, it was not such as to impose on the most ordinary purchaser. No one intelligent enough to take care of himself in buying coffee could be imposed upon by the alleged similarity between the two vignettes.

It does not appear that defendant sought to avail itself of the reputation of plaintiff to sell its coffee. We gather from the testimony that at times defendant succeeded in selling its coffee at a higher price than that at which plaintiff sold its own similar grade, and thus this leaves plaintiff with scant right to complain, for it shows that defendant's coffee was considered as worth at least as much as plaintiff's.

After arriving at this point in the case, we reviewed decisions to the end of finding assistance in arriving at a conclusion.

In the first decision cited (Wolfe v. Barnett, 24 La. Ann. 97, 13 Am. Rep. 111) the words, "Schiedam Schnapps," were recognized as plaintiff's peculiar property, and defendant was putting up and selling adulterated gins with labels that were calculated to mislead a purchaser who did not examine the gin with scrutiny.

In the next decision cited by plaintiff the court approvingly quotes the following:

"The owner of a trade-mark or label is entitled to protection against one who attempts *to deprive him of them by using them without his knowledge or consent.*" [Italics ours.] Insurance Oil Company v. Scott, 33 La. Ann. 952, 39 Am. Rep. 286.

Beyond question in the cited case the defendant was attempting to appropriate plaintiff's trade-mark or name.

Here there is no such attempt. The defendant was not attempting to use words, signs, or legends so combined as to be an interference with plaintiff's rights.

In Funke v. Dreyfus, 34 La. Ann. 83, 44 Am. Rep. 413, the case grew out of an attempt to use the trade-mark of another person. Defendant sought to appropriate the label.

In Handy & Co. v. Commander, 49 La. Ann. 1121, 22 South. 230, there was a complete attempt to appropriate a trade-mark, and the name "Commander" substituted to "Handy" did not have the effect of changing the imitation.

It was a direct wrong and a violation of plaintiff's rights.

This court held in the Case of Cusimano, 114 La. 314, 38 South. 200, that, if the resemblance is such as to deceive an ordinary purchaser, it was an act which may be restrained.

In the present case the trade-mark and labels before us were not such as to deceive an ordinary purchaser, and the evidence is that they never at any time deceived any one.

It should appear in some aspects of the case that defendant assumed a name in imitation of a prior name with the obvious design of imposing his article of merchandise in place of that of plaintiff. Canal Company v. Clark, 13 Wall. 324, 20 L. Ed. 581.

As to the writ of injunction, and when it will issue to protect a trade-mark and label:

It may be that, despite the fact that a plaintiff fails to prove injury sufficiently to recover damages, yet, if it be evident that a defendant has resorted to unfair means to gain an advantage, the injunction might issue.

But, to sustain the contention of unfairness and fraud and a right to an injunction, it should be made to appear that the asserted imitation caused purchasers to purchase one article (his own) supposing it to be his competitor's. Manhattan Medicine Co. v. Wood, 108 U. S. 218, 2 Sup. Ct. 436, 27 L. Ed. 706; 46 Century Digest, p. 79, § 64.

This defendant did not succeed in doing.

Again it should be made to appear that the imitation to deceive was not the only question; but that the public was deceived. Blackwell v. Wright, 73 N. C. 310.

The great and paramount object of a trade-mark is to protect the public from deceit. 46 Century Digest, p. 82, § 64.

We leave this branch of the case, and take up for decision the issue just referred to as the important issue: Defendant's attack on plaintiff's methods in business as not being such as entitle it to the protection of the law under which it obtained its trade-mark and label. The point presented now under consideration is that plaintiff used the words "Java Blend," which it had lithographed upon its cans, as part of the combination on its label; that plaintiff did not sell the least part of anything that can be identified by the name "Java"; that the asserted coffee sold by plaintiff was a cheap grade of Rio coffee mixed with chicory.

It is admitted by plaintiff that the coffee "mixture" in question does not contain an atom of Java. The contention on the part of plaintiff in answer to defendant's charge is that it was harmless and as a coffee not unknown to the trade.

We none the less are of the opinion that the evident purpose was to sell the coffee and to give it as much advertisement by the use of the words "Java Blend" as possible.

It was not a grade of coffee which the ordinary buyer had a right to expect if he was not aware of the mixture.

But the defendant is not in a position to strongly urge objection on the ground stated. Its own trade-mark and label had the same words "Java Blend," and it sold the same grade of coffee, similar mixture of coffee and chicory, and, strange to say, its president admits that the purpose of defendant in using these words was to deceive the public.

The words "Java Blend" were used by a number of dealers in coffee in advertising a low grade of coffee.

The idea of making use of the words "Java Blend" originated in another state, and it seems it was freely borrowed here.

The government has interposed its authority, and there is now a general injunction for the protection of the public from misleading statements whether injurious or not.

The drug and food act was passed on June 30, 1906 (34 Stat. 768, c. 3915 [U. S. Comp. St. Supp. 1907, p. 928]).

This suit was filed in March, 1907.

The word "chicory" has succeeded the words "Java Blend" on the cans, and is now a fair warning to the public who is at liberty to buy the imitation or not.

The defendant, in addition to the charge of misrepresentation by plaintiff by the use of the words "Java Blend" urged that at one time plaintiff sought to increase the inducement for buying its cans of coffee by inclosing therein a cup and saucer; that, in thus inclosing a cup and saucer in the package, it displaced the coffee, and reduced the quantity of the mixture stated on the package.

We find that it is stated in evidence that the quantity less of coffee was about six ounces. This is seized upon by defendant as one of the defenses.

The facts about this are that one of the officers of the defendant company directed the attention of one of plaintiff's customers to the deficiency, whereupon the customer complainingly notified plaintiff, and plaintiff immediately thereafter rectified the matter.

Plaintiff had a larger can made and in it placed the cup and saucer, and the required number of pounds.

The use of the words. "Java Blend" under the circumstances was unauthorized. Others were doing likewise. Still that was no reason for the use of the words or for substituting the cup and saucer for a very small part of the coffee, although, as relates to the latter, we are not inclined to give it any importance. It was a temporary matter, and amounts to little anyway.

We come to the question of delay. There was considerable delay on the part of plaintiff.

After having given a tardy notice to the defendant to desist from interference with plaintiff's trade-mark, the plaintiff was tardy in taking steps to prevent interference.

No rule at all exact has been found upon the subject save that plaintiff should not sleep upon his right; there should be no great delay.

There was unquestionably delay in this instance.

In Coats v. Merrick Thread Co., 149 U. S. 573, 13 Sup. Ct. 966, 37 L. Ed. 847, the court said:

"Plaintiffs having submitted to delay for 12 years, have waived their rights."

The delay was considerably less in the pending case; still there was delay which could and should have been avoided.

The right to damages and to an injunction (should we concede that there was such right) was too dim to serve as a basis for judgment.

In conclusion:

Increase in sales.

We are informed by the testimony that since the enactment of the pure food law, requiring a true label to the package, larger sales of the coffee mixture have been made by plaintiff and defendant.

It would not be logical to take a general

statement, not directly related to the subject matter, as settling a disputed point.

It may be that the consumer, now that he is informed by the label of the contents of the mixture—that it is harmless—although not all coffee, is more willing than heretofore to buy the article.

Java Blend.

Plaintiff did not originate the combination of those words. It was adopted by other merchants, and served a purpose. In the business competition, merchants, plaintiff and defendant included, adopted these words of their competitors. It may not be of the greatest importance, none the less, the law requires that the trade-mark certificate be followed and affords protection to the extent that the holder complies with its terms.

The fault in thus advertising of a number of merchants of the community affords no ground upon which it is possible reasonably to hold that one or two of the holders of trade-marks can be relieved from the necessity of complying with their terms.

Prior to pure food law:

Let us return for a moment to the time when there was no pure food law, and view the question for a moment from that standpoint. We are at a loss to determine that plaintiff has a right to an injunction to protect its use of the words "Java Blend."

It would not have been proper to authorize the plaintiff to continue the business of selling the mixture in that name. It would, at least, have been necessary to amend its label.

The certificate of the trade-mark includes only the sale of "coffee," nothing else. It does not authorize the sale of a "mixture" as Java Blend.

We have given to this case our earnest attention.

As relates to the mixture, we are not inclined to characterize it as a great abuse which particularly reflects on the plaintiff. We do think, however, that the article should be similar to the article described in the representation for the trade-mark and similar to the article described in the certificate at the time that application is made to the government for a trade-mark in order to entitle plaintiff to the judgment for which he instituted suit.

We attach no blame to any one in particular. It was the general practice which was at fault.

For reasons assigned, the judgment appealed from is affirmed.

MONROE and PROVOSTY, JJ., concur in the decree.