(79 South. 529)

No. 21307.

TITLE & MORTGAGE GUARANTEE CO., Limited, v. LOUISIANA ABSTRACT & TITLE GUARANTEE CO.

(June 29, 1918.)

*(Syllabus by Editorial Staff.)*

CORPORATIONS ⟝49(1) — USE OF SIMILAR NAME BY OTHERS—INJUNCTION.

A corporation engaged in the business of guaranteeing titles, the name of which is the Title & Mortgage Guarantee Company, Limited, could not, under Act No. 267 of Acts 1914, enjoin another company engaged in the same business and known as the Louisiana Abstract & Title Guarantee Company from using the phrase "Title Guarantee Company" in its name, on the ground that it has a proprietary interest in such descriptive words.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Suit by the Title & Mortgage Guarantee Company, Limited, against the Louisiana Abstract & Title Guarantee Company for an injunction. From a dismissal of plaintiff's suit, it appeals. Affirmed.

George C. Walshe, of New Orleans (Chas. F. Buck, J. Zach Spearing, Jas. J. McLoughlin, and E. M. Stafford, all of New Orleans, of counsel), for appellant.    A. D. Danziger, J. P. Baldwin, Burt W. Henry, and Eldon S. Lazarus, all of New Orleans, for appellee.

PROVOSTY, J. An exception of no cause of action was sustained by the trial court to the following petition, and plaintiff's suit was dismissed:

"The petition of the Title & Mortgage Guarantee Company, Limited, a corporation organized and doing business in the state of Louisiana, domiciled in the city of New Orleans, parish of Orleans, with respect shows:

"(1) That it was duly organized and incorporated by act before C. G. Rebentisch, notary public, in the parish of Orleans, dated March 31, 1903, with the object and for the purpose of conducting and carrying on the following described business, to wit:

"'To guarantee by bond or other contract titles to real estate in the city of New Orleans,

and other municipal corporations in the state of Louisiana, and for other purposes, all of which are fully set forth in said act of incorporation, a certified copy of which is hereto annexed and filed as part of this petition.

"(2) That 1,000 shares of its authorized capital have been issued and paid for in cash at par value, making a fully paid-up cash capital of $100,000, all in accordance with the provisions of said charter.

"(3) That immediately from and after the date of its organization and completion of sufficient stock subscription necessary, it opened offices, extensively advertised its business under its said corporate name and title, and has been and is now successfully conducting same, accordingly.

"(4) That plaintiff corporation has earned and acquired the confidence of the business community, especially that portion of it interested in transaction of real estate, and has done a fairly remunerative business having regularly earned and paid moderate semiannual dividends to its stockholders, and accumulated a fair surplus and undivided profit fund.

"(5) That your petitioner is and was of the business of guaranteeing the validity of title to real estate, a business common and successful in many of the larger cities of this country, in this city and state, and has to the extent aforesaid succeeded by careful management, patient waiting, and liberal and expensive advertising, in the newspapers and otherwise, to establish itself on a successful and promising basis.

"(6) That your petitioner has become known, reputed and spoken of and about as the 'Title Guarantee Company,' and under this designation has acquired and holds the confidence of the people as trustworthy, successful, and reliable, and has so operated and become popularly known during the entire period of its existence and active business of now more than ten years.

"(7) Petitioner now further shows that by act before A. D. Danziger, notary public, passed February 18, 1914, certain persons, to wit, P. H. Saunders, Felix J. Dreyfous, Herman Weil, W. W. Bouden, Edward Wisner, Solomon Wolff, Lynn H. Dinkins, Eldon S. Lazarus, A. D. Danziger, P. M. Lamberton, M. P. Bouslog, Meyer Eiseman, Charles De B. Claiborne, F. Dietze, Jr., and others organized a corporation under the name and title of 'the Louisiana Abstract & Title Insurance Company,' with domicile in this city and parish, and by act before the same notary, dated July 13, 1914, changed the name and title of said corporation to 'the Louisiana Abstract & Title Guarantee Company,' and making certain other amendments, now forming part of said incorporation.

"(8) That the main object and purpose of said corporation, besides some incidental details, in which petitioner is not concerned, as expressed in the amended charter of July 13th, is identical in substance and intent, and provides identically for the business of guaranteeing titles to real estate as provided in the charter of petitioner, and carried on by it as aforesaid.

"(9) That since the said amendment and change of its name and title, said corporation has and is constantly giving designed and deliberate prominence to that part of its title expressed in the words 'Title Guarantee Company' in its letter heads, publications, and advertisements, and has designated the building in which it has its offices as the 'Title Guarantee Building,' and in all its advertisements gives prominence to the words 'Title Guarantee Company,' with the evident intent to make itself known as the 'Title Guarantee Company.'

"(10) Petitioner now further shows that although its full corporate name is Title & Mortgage Guarantee Company, it is and has been during all the years of its existence in this community known, spoken of, commonly reputed and dealt with as the 'Title Guarantee Company,' which fact as well as the nature of its business was well known to many of the individuals composing the membership and stockholders of defendant corporation and particularly to its officers and organizers, as petitioner through its officers is informed and believes.

"(11) Petitioner now shows that it has acquired a property right to the title under which its business has been conducted entitled to the protection of the law against all infringement and unfair competition.

"(12) That the acts of the defendant corporation, as hereinabove set forth, constitute an unlawful infringement and unfair competition by which defendant seeks to derive benefit and advantage in its business from the use of petitioner's name at its (petitioner's) expense and to its injury and damage.

"(13) That the similarity of names as set forth is misleading and tends to confusion, and is likely to divert business intended for petitioner as the Title Guarantee Company, known to the public, the said new company resulting in what is technically recognized as unfair competition to the benefit of defendant and the injury of petitioner.

"(14) That by reason of the similarity of names instances of confusion and mistakes have arisen between the two companies and presumably are likely to happen again.

"(15) Petitioner shows that some time during the month of May or June, and during the time intervening from the date of the organization of defendant company under the name of the Louisiana Abstract & Title Insurance Company and the 13th of July, 1914, the date when it changed its name, substituting the words 'Title Guarantee Company' for 'Title Insurance Company,' certain informal negotiations were had between the officers of the two companies with a view to their possible consolidation and a proposition was orally submitted by the president of the defendant company to the president of the petitioner, for the purchase and acquisition of the stock and assets of plaintiff company, which was not accepted.

"(16) That shortly after the failure of these negotiations, the aforesaid change in the name and title of said defendant company was made. to wit, on July 13, 1914, four days after Act

No. 267 of the Acts of the General Assembly of the State of Louisiana was approved, being a general statute relative to corporations which, among other matters, not pertinent, provides:

"That the name of a corporation (about to be created) shall not be the same nor so similar as to cause confusion with the name of any other domestic corporation or foreign corporation admitted to do business in this state'; and petitioner avers that though this act had not been promulgated, the provision quoted is declarative of the policy of the state and stamps as unjust, illegal, and unfair the acts of defendant corporation herein in question.

"(17) Petitioner now shows that irrespective of the fact whether the officers and stockholders of said defendant corporation consciously acted with wrongful motive and intent, avers and charges that said conduct and acts of said corporation constitute in law a fraudulent infringement upon the rights of petitioner and unfair competition conceived and executed with the unlawful purpose and effect of trading and obtain business on the name, reputation, and good will owned and maintained by petitioner to its great injury and damage.

"(18) Petitioner shows that the rights and advantages acquired and accruing to it from the reputation and good will which it possesses and enjoys in connection with its business is of great value. It has already sustained some damage and fears and believes that it will be damaged in an amount largely exceeding the sum of $2,500 if plaintiff (defendant) is allowed to persist in the unlawful use of petitioner's name and title and under it to continue the unfair and unlawful competition upon which it has entered and enjoy the profits of unlawful infringement.

"(19) Petitioner alleges that it made amicable demand on defendant in the premises, which met with refusal.

"Wherefore petitioner prays that the defendant corporation, the Louisiana Abstract & Title Guarantee Company, be cited through its proper officer, to appear and answer this petition, and after due proceedings there be judgment in favor of petitioner and against the defendant perpetually enjoining, restraining, and prohibiting said defendant corporation from using the words 'Title Guarantee' in the manner and form in which it now has them, and uses them as part of its corporate name and title; and enjoined from advertising itself as the Title Guarantee Company, and from designating the building in which it carries on its business as the Title Guarantee Building, and generally enjoining, restraining, and prohibiting said company from carrying on the same business as that conducted by plaintiff, under its said corporate name and title, and petitioner reserves the right to sue for such damages as it may have sustained or may hereafter suffer by reason of said act of defendant company; and petitioner prays for all such other and further aid, remedy, and relief as to the nature of the case may require, and law and equity permit; and petitioner prays judgment on all costs," etc.

143 LA.—29

Companies having as part of their names the words "title guarantee," either with or without other words, existed numerously in English speaking countries before the plaintiff company was organized. The said words are descriptive of the kind of business done by said companies. See Ency. Brit. (11th Ed.) verbis "Title Guarantee Companies"; 28 A. & E. E. of L. (2d Ed.) p. 220; see titles of cases cited in note to 38 Cyc. pp. 344 to 355. The organizers of the defendant company naturally had the right to include in the name of their company these words descriptive of their business. If any further proof were needed of these words being descriptive of that kind of business such proof would be abundantly found in Act 170, p. 398, of 1916, referring to this kind of business by that name in the provisions for its regulation. The fact that the defendant company substituted the word "guarantee" for "insurance" in its name would only go to show that the former word was thought to be an apter one for describing the business. No allegation is made that this change was from any ulterior motive. Not that such an allegation would have made any difference.

The business of the defendant company being to guarantee titles, nothing could be more natural than that it should seek to give prominence to that feature of its name. There could be harm in this only if plaintiff had a sort of proprietary interest in that kind of business or in those words descriptive of it.

The only similarity between the names of the two companies is in these words of description. The other words composing the names are different; the name of plaintiff being "The Title & Mortgage Guarantee Company," and that of defendant, "Louisiana Abstract & Title Guarantee Company."

If the building in which plaintiff carried on its business had borne conspicuously on it the name "Title Guarantee Building," and

the defendant company engaging in the same kind of business had, with more or less like conspicuousness, inscribed the same name upon its building, this perhaps might have been significant; but there is no allegation of the plaintiff's having had this name upon the building in which its offices were.

The defendant company had the perfect right to do everything the petition alleges it did.

In the case of the Car Advertising Co. v. New York Car Advertising Co., 57 Misc. Rep. 105, 107 N. Y. Supp. 547, the Supreme Court of New York said in this connection:

"The expression 'car advertising' is a general term appropriately descriptive of the business, and the authorities are to the effect that such a term cannot be exclusively appropriated by any one. In Farmers' Loan & Trust Co. v. Farmers' Loan & Trust Co. of Kansas, 1 N. Y. Supp. 44, the court said:

" 'Nor could the first national bank established enjoin every other bank from using the name "First National Bank." Nor could the Mechanics' National Bank of New York enjoin the Mechanics' National Bank of New Jersey. * * * The name "Loan & Trust Company" is not an uncommon one as applied to certain monetary institutions. And it would seem that the prefix "Farmers" has been applied to designate companies engaged in similar business in different states.' " * * *

"It is plain that there has been in the past, and doubtless there will continue to be in the future, more or less of confusion and of mistakes made, such as in sending mail, telegrams, and telephone messages to the two companies. But this ought not to be held due to the act of the defendant, but rather to the act of the plaintiff, which adopted a generic and descriptive term for its corporate name without adding any distinguishing word whatever."

In the case of Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U. S. at page 602, 9 Sup. Ct. 167, 32 L. Ed. 535, the Supreme Court of the United States similarly observed:

" 'Goodyear Rubber' are terms descriptive of well-known classes of goods, produced by the process known as Goodyear's invention. Names which are thus descriptive of a class of goods cannot be exclusively appropriated by any one. The addition of the word 'Company' only indicates that parties have formed an association or partnership to deal in such goods, either to produce or to sell them. Thus parties united to produce or sell wine, or to raise cotton or grain, might style themselves Wine Company, Cotton Company, or Grain Company; but by such description they would in no respect impair the equal rights of others engaged in similar business to use similar designations, for the obvious reason that all persons have a right to deal in such articles, and to publish the fact to the world. Names of such articles cannot be adopted as trade-marks, and be thereby appropriated to the exclusive right of any one; nor will the incorporation of a company in the name of the article of commerce, without other specification, create any exclusive right to the use of the name."

In the case of Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972, the Supreme Court of the United States said:

"Having the right to that use, courts will not interfere where the only confusion, if any, results from a similarity of the names, and not from the manner of the use. The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and if defendant so conducts its business, as not to palm off its goods as those of complainant, the action fails."

As the court said further in that case:

" 'It is not the use, but dishonesty in the use, of the name that is condemned.' "

And in the case of Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 604, 9 Sup. Ct. 168, 32 L. Ed. 535, the Supreme Court of the United States again said:

"The case at bar cannot be sustained as one to restrain unfair trade. Relief in such cases is granted only where the defendant, by his marks, signs, labels, or in other ways, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff, thus palming off his goods for those of a different manufacturer, to the injury of the plaintiff. * * *"

In the case of Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997, the Supreme Court of the United States announced the doctrine of unfair competition clearly and unequivocally in these terms:

"It seems, however, to be contended that plaintiff was entitled at least to an injunction, upon the principles applicable to cases analogous to trade-marks; that is to say, on the ground

of fraud on the public and on the plaintiff, perpetrated by defendant by intentionally and fraudulently selling its goods as those of the plaintiff. Undoubtedly an unfair and fraudulent competition against the business of the plaintiff—conducted with the intent, on the part of the defendant, to avail itself of the reputation of the plaintiff to palm off its goods as plaintiff's—would in a proper case constitute grounds for relief."

See, also, N. O. Coffee Co. v. American Coffee Co., 124 La. 19, 49 South. 730.

Judgment affirmed, at cost of plaintiff.