OVERTON, J.
 

 This is a suit for an injunction and for damages for the alleged infringement of a trade-mark. The case comes before us from a judgment sustaining an exception of no cause of action.
 

 The facts alleged in the petition, and shown by the exhibits attached to it, so far as material, are as follows:
 

 Since 1919, plaintiff has been operating a business known as the Baton Rouge Coffee Mills. This business consists of roasting,.
 
 *561
 
 grinding, and blending coffee, of packing it alone, and also with chicory, in packages of various sizes, and of selling the same to dealers, in the city of Baton Rouge, in other parts of the state, and in various sections of the United States.- In 1919, plaintiff adopted, it is alleged, the term “Community” as the name of his coffee, whether packed alone or blended with chicory, and since adopting the .name has spent considerable money in advertising it under that name. As a result of this advertisement and of plaintiff’s efforts, it is alleged, the term “Community,” as applied both to his coffee and coffee and chicory, became distinctive thereof, prior to January 1, 1926. On April 20, 1926, plaintiff secured from this state, under Act 49 of 1898, a certificate showing that he, under the name of the Baton Rouge Coffee Mills, had filed for record, in the office of the secretary of state, two copies of the trade-mark, “Community Brand,” for ground coffee and for ground coffee and chicory, together with a sworn application, showing the remaining requisites to obtain registry of the trademark. On March 18,1925, plaintiff also made an application to the Commissioner of Patents of the United States for the registration of the term “Community,” or, as shown by a copy of the application and drawing, attached to the petition, which is controlling, for the registration of the term “Community Brand,” as a trade-mark for “coffee in class 46, Poods and Ingredients of Poods,” and the Commissioner of Patents issued to plaintiff a certificate, entitling him to the exclusive use of the trade-mark for a period of 20 years.
 

 Among plaintiff’s former customers was a corporation organized in November, 1923, known as the “Community Stores of Louisiana, Inc.,” which is the defendant herein. This corporation owns and operates a number of stores in Baton Rouge, and one at Port Allen, La. In the early part of 1926, the Community Stores of Louisiana, Inc., the defendant herein, without plaintiff’s consent, began packing and offering for sale, in containers of the same general size and shape as those used by plaintiff, ground coffee, and ground coffee and chicory, under the name, “Community Stores Coffee” and “Community Stores Coffee and Chicory,” if the allegation, so showing, is not modified by the exhibits attached to the petition, and has been selling the same to consumers and to retailers for resale, under that name, ever since, without plaintiff’s consent. ''
 

 Plaintiff’s trade-mark, as appears from the design, attached to the certificate issued by the Commissioner of Patents, and annexed to the petition herein, is “Community Brand,” capitals being used in printing those words. The word “Community” is printed with a slightly upward slant, the letters gradually diminishing in size, so as apparently to make room for the word “Brand,” which is also printed in capitals immediately beneath it, the letters of the word “Brand” gradually increasing in size, so as to correspond at their top with the slant given the word “Community” ; the lower part of the word “Brand” being on a level with the bottom of the letter “C” in “Community.” Intervening between the bottom of the letter “C” and the word “Brand” is a barred triangle or conical design. This trade-mark appears conspicuously on the containers used by plaintiff. Immediately beneath it, on the containers, the words “Pure ground coffee,” or “Pure ground chicory and coffee,” as the case may be, appear, and then follow the words, “Packed by Baton Rouge Coffee Mills, Baton Rouge, La.” At the bottom is the picture of a colonial residence, and on the reverse is a cup, emitting steam, placed within a circular figure.
 

 On defendant’s containers, which are differently colored from plaintiff’s, samples of which are attached to the petition herein, there appear in a colored square, printed at an angle of 45 degrees, the words “Communi
 
 *563
 
 ty Stores,” in capitals,, with.' the word “Stores” immediately helow the word “Community,” and with the letters all of the same size, with the exception of the letter “C,” which extends as low as the bottom of the letter “S” in “Stores.” In the same square, in a corner thereof, the words “Community Stores” are followed by the words “Good eats for the table,” and immediately below, in a white square, appear the words, printed in capitals, “Pure Coffee — Light Roast' — I-Iigh Grade — Baton Rouge, Louisiana,” or, as the case may be, “Coffee and Chicory, Baton Rouge, Louisiana,” and the same inscriptions appear on the reverse of the containers. On a strip used by plaintiff to seal the containers, intended for coffee, or for coffee and chicory, appear the words on the first line, “Community Stores,” and on the second line the word “Coffee,” without any punctuation between “Stores” and “Coffee,” and on the third line, still without punctuation, the words “Baton Rouge, Louisiana.”
 

 The question to be decided is whether defendant has infringed plaintiff’s trade-mark. In 26 Ruling Case Law, § 49, p. 869, it is said:
 

 “The infringement of a trade-mark consists in its use or imitation by another on his goods in such manner that the purchasers of such goods are deceived, or liable to be deceived, and induced to believe that they were manufactured or sold by the owner of the trade-mark. When this occurs, injunctive relief will ordinarily be granted. The essential element is the same in trade-mark cases as in cases of unfair competition unaccompanied with trade-mark infringement. In fact, the common law of trade-marks, is but a part of the broader law of unfair competition. The wrong consists in misrepresenting to the public, by the use of his trade-mark, goods or wares of another as having been made by the true owner of the mark, and. thereby depriving him to a greater or less extent of the benefit of the good will of his establishment, and the reputation that he has given the articles made by him. * * * ”
 

 In Gorham Manufacturing Co. v. White, 14 Wall. 511, 20 L. Ed. 731, with reference to what constitutes an infringement, it was said:
 

 “It is the appearance to the eye that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense, and identity of appearance, or sameness of effect upon the eye, is the main test of substantial identity of design.
 

 “It is not essential to identity of design that the appearance should be the same to the eye of an expert. If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an'observer, and sufficient to induce him to purchase one, supposing it to be the other, the one first patented is infringed by the other.”
 

 A rule, similar to the foregoing, is laid down in the case of A. Cusimano & Co. v. Olive Oil Importing Co., 114 La. 312, 38 So. 200. There, it is said:
 

 “The first question to be considered is whether the label or trade-mark used by defendant is a ‘colorable imitation’ of plaintiff’s trade-mark, so that the public ‘may be deceived or misled into the purchase of the productions of the one supposing them to be those of the other’ [citing] Wolfe v. Barnett & Lion, 24 La. Ann. 99, 13 Am. Rep. 111.”
 

 With reference to the degree of similarity necessary to constitute an infringement, it was said in Handy v. Commander, 49 La. Ann. 1119, 1129, 22 So. 230, 235, quoting from McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828, that:
 

 “What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do in that re
 
 *565
 
 gard is to say that no trader can adopt a trade-mark so resembling that of another trader as that ordinary purchasers, buying with ordinary caution, are likely to be misled.”
 

 In our view, defendant has not infringed plaintiff’s trade-mark. The matter printed on its packages, and the manner of displaying it thereon, are sufficiently unlike the matter and the display on defendant’s packages not to mislead an ordinary purchaser, using ordinary caution, into buying defendant’s product, thinking that he is purchasing plaintiff’s. But the essential thing to be considered is the alleged infringement of plaintiff’s trade-mark, as applied to coffee, and to coffee and chicory, which, as stated, is “Community Brand,” with the last word printed under the first, and with a barred triangle or conical figure opposite that word. The words “Community Stores,” found on defendant’s packages, are obviously the first words of its corporate name — the words by which its stores are likely known in the localities where located. These words on the packages proper, do not appear to be used in connection with coffee, and with coffee and chicory, hut rather to be used as the first words of defendant’s name on packages containing, and advertised thereon in a separate square to contain, coffee, or coffee and chicory. This is made all the more pronounced by the words “Good eats for the table,” printed in the same square with, and beneath, the words “Community Stores.” So- far as concerns the packages proper, the effect created on the mind is rather that of defendant’s using the first words of its name on its packages to show the source of the packages than to designate a particular brand of coffee; whereas, plaintiff is using the words “Community Brand” to designate a particular brand of coffee. While it was evidently defendant’s intention to carry out this idea on the slips of paper, used to seal the packages, still it is possible to read the word “Coffee” thereon as a part of the term “Community Stores,” thereby making that term designate a particular brand of coL fee; but, even so, the general effect of the whole is such as not to mislead with the exercise of ordinary caution.
 

 For these reasons, the Judgment appealed from is affirmed.