(90 South. 755)

No. 22686.

COCA–COLA CO. et al. v. VIVIAN ICE, LIGHT & WATER CO.

(May 31, 1920. On Rehearing, Jan. 30, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Trade-marks and trade-names and unfair competition** ⬥⇒72—**Bottling and selling soft drink with plaintiff's trade-name blown in the bottles held unauthorized use of trade-mark.**

Where defendant purchased a quantity of the syrup used in making a beverage sold under the name "Coca-Cola" and put it in bottles, using a larger proportion of the syrup than that intended by the manufacturers for bottling purposes and adding some caramel syrup for coloring purposes, and then sold the bottles to the trade generally with the name "Coca-Cola" stamped on the caps and blown into the bottles and with defendant's name stamped thereon as the manufacturer or bottler, such acts *held* to constitute a use of plaintiffs' trade-name without their consent, regardless of whether the article contained in the bottle was genuine Coca-Cola or not.

2. **Trade-marks and trade-names and unfair competition** ⬥⇒23—**Trade-mark gives owner monopoly of article as sold under trade-mark.**

A trade-mark gives the owner something in the nature of a monopoly; a monopoly not in the article sold under the trade-mark, but a monopoly of that article as sold under the trade-mark.

On Rehearing.

3. **Trade-marks and trade-names and unfair competition** ⬥⇒98—**$1,000 held excessive for unauthorized use of trade-mark.**

In a suit to enjoin the unauthorized use of a trade-mark and for damages and an accounting, an allowance of $1,000 *held* excessive and will be reduced to $100, where, although plaintiffs were entitled to damages, their amount was not capable of being accurately determined.

Provosty, C. J., and O'Niell, J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by the Coca-Cola Company and others against the Vivian Ice, Light & Water Company in damages and for an injunction to restrain illegal use of trademark. Judgment for plaintiffs, and defendant appeals. Modified and affirmed on rehearing.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

Blanchard, Goldstein & Walker, of Shreveport, and Candler, Thompson & Hirsch, of Atlanta, Ga., for appellees.

DAWKINS, J. This is an action in damages and for injunction to restrain the alleged illegal use of a trade-mark.

Defendant admits substantially the allegations of fact charged against it, but denies the conclusions of law drawn therefrom by the plaintiff.

There was judgment below in favor of plaintiff for the sum of $1,000, under the trade-mark statute of this state, enjoining the defendant from using the trade-name of the plaintiff, ordering it to account to the plaintiffs for the profits derived from the same, and that it deliver up to plaintiffs, or some one designated by them, "any and all bottles, crowns, labels, boxes, or advertising matter in its possession upon which appears the name 'Coco-Cola,' or in association with any other words, and also all of the products in a form sufficiently similar to the product of the plaintiffs to cause deception," and that plaintiffs be decreed to have the sole and exclusive use of the trade mark or name "Coca-Cola," in connection with any drink or beverage.

Defendant prosecutes this appeal.

Opinion.

The plaintiffs are the Coca-Cola Company, a Georgia corporation, the Coca-Cola Bottling Company, incorporated under the laws of

Tennessee, and the Star Bottling Works, Limited, a Louisiana corporation. The Georgia corporation is what might be termed the parent company, owner and possessor of the trade-mark "Coca-Cola," and under which it manufactures two kinds of syrup bearing that name; one to be used in the preparation of a soft drink of the same name by soda fountains, which is sold to the trade generally, and the other to be used in putting up the beverage for distribution in bottles. The second syrup is distributed exclusively through the Tennessee corporation, which is required to make definite and specific contracts with those to whom the syrup is sold for bottling purposes, and under which certain well-defined restrictions are imposed as to the quantity and proportions of the syrup to be used, and as to the right of inspection by representatives of the Coca-Cola Company, in order to determine the sanitary conditions under which the bottled drink is to be made; the purpose being, it is alleged, to maintain a particular standard of purity and cleanliness to sustain the reputation of the beverage.

The formula for making the syrup is a secret one, but the record discloses that the kind furnished to soda fountains is not as strong as that intended for bottling purposes; the proportions of ingredients used being considerably dissimilar.

Defendant purchased a considerable quantity of the syrup intended for use at fountains, and by the use of a larger proportion than that intended for bottling, and adding some caramel syrup for coloring purposes, had been and was manufacturing, putting up, and selling in bottles to the trade generally a beverage with the name "Coca-Cola" stamped on the caps and blown into the bottles, and with the name Vivian Ice Company stamped thereon as the manufacturer or bottler.

The lower court has covered the case so admirably in its written opinion that we adopt and quote from the same at length as follows:

"There can be no dispute about plaintiffs being the owners of this trade-mark, both under the laws of the United States and of the state of Louisiana. Under the United States registration, it covered, not only the syrup, but the beverage or drink to be made from the syrup.

"Section 3 of Act 49 of 1898, after providing for the registration of the trade-mark and the description of the merchandise to be covered by it, provides that 'No other person,' etc., 'has the right to such use, either in the identical form or in any such near resemblance thereto as may be calculated to deceive.' Section 5 of this same act provides that 'Every such person [the owner] may proceed by suit to enjoin the manufacture, use, display or sale of any counterfeits or imitations thereof,' and the courts shall have the right to grant injunctions restraining such use, etc.

[1] "Defendant has undoubtedly used the trade-mark of plaintiffs without their consent, and under this act we do not think it makes any difference whether the article contained in the bottle was genuine Coca-Cola or not.

"But, irrespective of this state law, we shall discuss the case from the standpoint of the federal law.

"A trade-mark is designed, not only for the protection of the owner of same, but as well for the protection of the purchasing public; it is a guaranty that the buyer is getting the very article signified by the trade-mark; it is a guaranty by the manufacturer himself that the receptacle contains the very contents intended to be covered by that trade-mark.

"We shall first take up for discussion the authorities cited by counsel for defendant, which authorities, it is contended, bear out the contention that these contracts are in violation of the anti-trust laws, and the equitable writ of injunction does not lie to maintain them.

"The first case is that of Adams v. Burks, 17 Wall. 453, 21 L. Ed. 700. All that was held in that case was that when a patented article was once sold the purchaser of same had the right to use it wherever he pleased, and that the right of use stood on a different footing from the right to make and sell.

"The next case is that of Keeler v. Folding Bed Co., 157 U. S. 639, 15 Sup. Ct. 738, 39 L. Ed. 848, in which the court said: 'One who buys patented articles of manufacture from one authorized to sell them within the territory of

the purchase becomes possessed of an absolute property in such articles, unrestricted in time or place, and may sell them in other territory of other assignees of the patent, although he purchased them for the purpose of selling them in such other territory.' We do not think this case has any bearing; if the defendant had been selling the syrup in the original package under the original trade-mark, having purchased same and becoming the absolute owner thereof, then there would be some similarity of cases, and the defendant would have the right to so sell.

"The next case is that of Bobbs-Merrill Co. v. Straus, 210 U. S. 339, 28 Sup. Ct. 722, 52 L. Ed. 1086. In that case the plaintiff was attempting to fix the price of the copyrighted book by contract with the retailer, and the court held the same to be in restraint of trade; there was no question involved in that case of trade-mark, or the protection of the integrity of the goods represented by that trade-mark, but merely a price-fixing scheme, something that is not attempted in this case.

"The case of Miles Medicine Co. v. Park, 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. 502, was also nothing but a price-fixing scheme, which was held to be in restraint of trade.

"In the case of Park v. Hartman, 153 Fed. 24, 82 C. C. A. 158, 12 L. R. A. (N. S.) 135, known as the Peruna Case, the question of infringement of a trade-mark or unfair competition did not arise; it was merely another attempt to fix prices for retailers by means of contracts with the retailers.

"In the Appollinaris Case (C. C.) 27 Fed. 18, it was the genuine 'Hunyadi-Janos' water as put out by the original bottler and owner of the trade-mark, and as bottled by the owner of the trade-mark.

"The case of Motion Pictures Patents Co. v. Universal Film Mfg. Co. (decided by the Supreme Court of the United States on April 9, 1917) 243 U. S. 502, 37 Sup. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959, the attempt was made by way of a licensed patented machine, and notices stamped thereon, to limit the use of such machine to a certain class of pictures, and no other. The court held such contracts to be in restraint of trade. While that case shows the trend of the court, the case did not involve the vital principle involved in the present case.

"Practically the same principle in the last-quoted case was also involved in the case of Straus v. Victor Talking Machine Co., 243 U. S. 490, 37 Sup. Ct. 412, 61 L. Ed. 866, L. R. A. 1917E, 1196, Ann. Cas. 1918A, 955, also decided on April 9, 1917.

"Counsel for defendant also quotes the case

of Coca-Cola Co. v. Bennett (D. C.) 225 Fed. 429, refusing an injunction on the ground that these contracts were in restraint of trade; counsel saying in the brief filed herein: 'This contention as to the right to confine the sale to licensees for purposes of inspection, etc., was exploded by the federal court in the Bennett Case refusing injunction, which virtually denied the proposition dismissing the Coca-Cola claim, in which decree the Coca-Cola Company virtually agreed and took no appeal therefrom.' We shall discuss this case later on, but counsel is mistaken about the appeal, for an appeal was taken to the United States Court of Appeals, and the case reversed; the case on appeal being in 238 Fed. 513, 151 C. C. A. 449.

"In the case of Krauss v. Peebles (D. C.) 58 Fed. 591, Judge Taft used the following significant and almost prophetic language: 'It is doubtful whether the sale of merchandise in bulk under a trade-mark of the maker carries with it as incident thereto the right in the vendee to use the same trade-mark as a trade-mark on smaller and retail packages. It is true that the vendee cannot be prevented from stating the truth in reference to his wares, and that he may place upon his packages the statement that their contents were made by the real maker, and that they were sold by him under his trade-mark, but it seems to me that it is a different thing for the vendee to use the trade-mark as such. Such use might be characterized as the use of the maker's sign manual to guarantee that the contents of the smaller packages are his manufacture, whereas the truth of the assertion depends wholly on the good faith of the vendee.' In this case the goods put out in the smaller packages were not exactly the same as the original goods, and not exactly the same as the smaller packages put out by the owner of the trade-mark, and it was held that the owner of the trade-mark had the right to protect the integrity of his goods, and that it made no difference whether the other goods were better or worse than those put out by the owner of the trade-mark, that it was a violation of the trade-mark and could be enjoined. See, also, the case of Hires v. Xepapas (C. C.) 180 Fed. 952, which was also a case of two syrups, one intended for bottling and one for fountain use, and the infringer attempted to use the fountain syrup for bottling, and it was held that the owner of the trade-mark had the right to protect the integrity of his goods.

"In the case of Coca-Cola Co. v. Butler (D. C.) 229 Fed. 224, exactly the same defense was made as in this case, and it was held that the owner of the trade-mark had the right to main-

tain the integrity of his product by controlling the use of his basic ingredient, to the extent of granting exclusive licenses and maintaining a system of inspection of the final product as sold to the consumer, and that such contracts were not in violation of the Sherman Law or the Clayton Law (26 Stat. 209; 38 Stat. 730). This decision was handed down by a United States District Judge, and so far as we can find, was never appealed, but it was quoted with approval by the United States Court of Appeals in the Bennett Case.

"In the Bennett Case, as it was decided by the lower court, it was the genuine bottler's syrup used, and this syrup was sold to Bennett for the very purpose for which he was using it. His right to bottle being revoked as regular licensed bottler (the company) took up the territory. Further, as the lower court stated, there was no question presented of the right of plaintiff to protect its business against unfair competition in the palming off by defendants of a spurious or inferior article for the goods manufactured from plaintiff's product, and there was, furthermore, no contention in that case as to the proper syrup for bottling purposes.

"In the same case on appeal (238 Fed. 513, 151 C. C. A. 449), the syllabus is as follows:

" 'A manufacturer of a syrup used with carbonated water to produce a beverage which was sold either at soda fountains or in bottles, whose registered trade-mark covered both the syrup and the beverages, but who bottled none of the beverage, having contracted with others therefor under contracts requiring the purchase of syrup from the manufacturer and its preparation under regulations to protect the quality, can prevent one who has not the manufacturer's consent from bottling the syrup with carbonated water, even in accordance with the regulations, and selling it under the trademark, since otherwise the manufacturer would have no means of protecting the quality of the goods sold under his trade-mark.

" 'When a manufacturer of an article of food or drink sells it in bulk, and also puts it up in bottles bearing a distinctive trade-mark, the purchaser of the article in bulk cannot legally bottle it and affix the manufacturer's label to the bottle.

" 'The invalidity, under Sherman Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209 (Comp. St. 1913, §§ 8820–8830), of contracts by which the owner of a trade-mark covering both a syrup and the beverage made therefrom granted the exclusive right to bottle the beverage, does not affect the owner's right to prevent the sale of the beverage under the trade-mark by one who bottled it without consent.' * * *

"If the owner of a trade-mark covering both the syrup and the beverages made from the syrup can prevent the purchaser of the syrup in bulk from making a beverage out of the syrup and putting it on the market under the distinctive trade-mark of the seller, then we can see no good reason why any distinctive system of inspection between the owner of the trade-mark and the bottler of the syrup as a beverage, the same to be placed on the market under the distinctive trade-mark, would be invalid as in violation of the anti-trust laws, and likewise any reasonable contract to that effect, and other reasonable stipulations to protect the integrity of that trade-mark.

[2] "A trade-mark gives the owner of same something in the nature of a monopoly; a monopoly not in the article sold under the trademark, perhaps, but a monopoly of that article as sold under the trade-mark. It does not give such a monopoly as does a patent, but it is a monopoly nevertheless, and one that cannot be taken away by any anti-trust law."

See, also, American Tobacco Co. v. Polacsek (C. C.) 170 Fed. 117; Bulte v. Igleheart, 137 Fed. 492, 70 C. C. A. 76; Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526; Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co. (D. C.) 224 Fed. 566.

The lower court also found that, while defendant was putting out as good a quality of goods as its knowledge of the matter would permit, the difference between its product and that produced by the duly authorized representatives of the Coca-Cola Company was marked, and we think this finding is amply supported by the record. However, under the manner and form in which the beverage was put to the trade, the difference from the standpoint of appearance could not be easily detected by the consumer, and the case falls clearly within the doctrine announced in Cusimano & Co. v. Olive Oil Importing Co., Ltd., 114 La. 312, 38 South. 200.

Defendant complains that the court below allowed the plaintiffs to recover the sum of $1,000 damages, and also ordered defendant to account for the profits which had been

realized on the sales of the beverage; it being contended that there was no prayer to support such a recovery, in the first place, nor any provision of law under which it could be allowed, if claimed. However, paragraph C of the prayer is as follows:

"That the damages sustained by your petitioners, and each of them, by reason of the defendant's aforesaid unlawful acts, be ascertained, and that your petitioners, and each of them, have judgment therefor against the defendant, and that the said defendant be decreed to pay over to your petitioners, and each of them, the amount of said profits, together with all damages sustained."

The statute provides that—

."All courts of competent jurisdiction shall grant injunctions * * * and may award the complaint in any such suit damages resulting from such manufacture, use, sale or display as may be by the said court deemed just and reasonable, and shall require the defendants to pay to such person * * * all profits derived," etc. Act No. 49 of 1898, § 5.

As stated in the case of Cusimano & Co. v. Olive Oil Importing Co., Ltd., supra, the exact extent of the damages in such cases is hard to ascertain, and it was the evident purpose of the Legislature to allow a reasonable amount of discretion to the court in determining the amount to be awarded. In view of the facts and circumstances of the present case, we do not think that authority has been abused.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.

O'NIELL, J., dissents from the decree allowing damages, and otherwise concurs.

### On Rehearing.

LAND, J. A rehearing was granted in this case on the question of damages only.

The defendant contends that the decree of $1,000 damages is a mere fiat of the trial judge, based upon no evidence whatever and ultra petitionem, and that the correct judgment in this case should have been in favor of plaintiffs and ordering defendant to account to the plaintiffs, so that the question of damages, if any, could be determined.

Plaintiffs allege, in article XXXII of their petition, that—

"Your petitioners show that, by reason of the fraudulent, willful, and unlawful acts of the defendants as aforesaid, your petitioners have been and are prejudiced and injured in their business, and will be seriously and irreparably injured, unless defendant is restrained and enjoined from the aforesaid unlawful acts; and the reputation of your petitioners' product has been and is endangered, and its sale of Coco-Cola, by reason of defendant's acts, has been and will be seriously reduced; that it has already sustained loss and damage, the amount whereof cannot be stated with accuracy, by reason, among other things, of ignorance as to the quantity of defendant's product that has been sold by defendant, as above complained of, and in other unfair ways, the number of crowns or stoppers and other articles sold bearing the name 'Coca-Cola,' or other imitations of your first-named petitioner's trade-mark which have been used; that the damage done your three petitioners will exceed in each instance the sum of $2,000."

In the prayer of their petition plaintiffs pray:

"That the defendant be cited and that there be judgment in favor of petitioners and against defendant, ordering said defendant to account and pay over to your petitioners all profits diverted from your petitioners or received by the said defendant issuing out of the use of said defendant of your petitioners' trade-mark or trade-name 'Coca-Cola,' or by the sale of its products in a form sufficiently similar to the form of your petitioners' product to cause deceit; that the damage sustained by your petitioners, and each of them, by reason of the defendant's aforesaid unlawful acts, be ascertained, and that your petitioners, and each of them, have judgment therefor against the defendant, and the said defendant be ordered to pay over to your petitioners, and each of them, the amount of said profits, together with all damages sustained."

It will be seen from the above allegations in the petition and in its prayer that plaintiffs pray for damages (1) for injury to the reputation of their products and in their

business; (2) for the loss of profits which the defendant has diverted to itself, and the extent of which might possibly be determined by an accounting; but the extent of the damage resulting from injury to the reputation of their products and consequent injury to their business, not being susceptible of exact proof, is left to the discretion of the judge.

[3] However, we consider the sum of $1,000 allowed in our former decree as excessive, and said decree is therefore amended so as to reduce the damages therein allowed from $1,000 to $100, and, as amended, is reinstated and made the final judgment of the court.

PROVOSTY, C. J., and O'NIELL, J., dissent on the ground that there were no damages.