## McILHENNY CO. v. BULLIARD.

(District Court, W. D. Louisiana, Opelousas Division. April 30, 1926.)

No. 22.

**I. Trade-marks and trade-names and unfair competition ⬤97—Parties by agreement may modify decree enjoining use of trade-mark.**

Decree enjoining unfair competition in use of trade-mark *held* such as could be modified by agreement of the parties.

**2. Trade-marks and trade-names and unfair competition ⬤97—Reformation of decree in unfair competition suit, to make it conform to agreement of parties affecting it, held warranted.**

Reformation of decree enjoining unfair competition in use of trade-mark, to make it conform to written agreement of the parties concerning effect to be given it, *held* warranted.

**3. Trade-marks and trade-names and unfair competition ⬤68—Defendant held civilly responsible for prohibited use of trade-mark by his clerical help, as well as for intentional deceit.**

Defendant in suit to enjoin unfair competition in use of trade-mark *held* civilly responsible for prohibited use of particular name by his clerical help, as well as for intentional deceit of public.

**4. Trade-marks and trade-names and unfair competition ⬤97—That use of trade-name was by defendant's clerical help may be considered as mitigating circumstance in civil contempt proceeding.**

In civil contempt proceeding for violation of decree enjoining use of trade-mark and unfair competition, fact that prohibited use was act of defendant's clerical help *held* proper to be considered as mitigating circumstance.

**5. Trade-marks and trade-names and unfair competition ⬤97—Defendant held guilty of civil contempt in use of trade-mark.**

Defendant, violating decree enjoining use of trade-mark and unfair competition, *held* guilty of civil contempt, and required to appear for imposition of penalty.

In Equity. Suit by the McIlhenny Company against Ed Bulliard, in which a decree enjoining use of particular trade-mark and unfair competition was entered for plaintiff. On supplemental bill alleging violation of such decree, and on rule against defendant for civil contempt. Decree for complainant in accordance with opinion.

Joseph S. Clark, of Philadelphia, Pa., Edward S. Rogers, of Chicago, Ill., and J. M. Grimmet, of Shreveport, La., for complainant.

Emmet Alpha, of New Orleans, La., and George K. Perrault and W. C. Perrault, both of Opelousas, La., for respondent.

DAWKINS, District Judge. This case originated in January, 1919, and on May 18, 1920, the court rendered a decree as follows:

"It is ordered, adjudged, and decreed as follows:

"(1) That the word 'Tabasco,' when adopted by plaintiffs' predecessor, as applied to pepper sauce of his manufacture, was not then and is not now employed in a geographical, generic, or descriptive sense, but was and is employed fancifully, and only to indicate ownership and origin, without regard to the location from which the said product or any of its ingredients came, and said word 'Tabasco' was and is a valid trade-mark, and is now the sole property of the plaintiff.

"(2) That the use by the defendant Ed Bulliard of the word 'Tabasco' upon and in connection with the sauce manufactured and sold by him is an infringement of plaintiff's said trade-mark in said word, and that the use by defendant, in connection with the sauce of his manufacture and in the advertisement and sale thereof, of bottles, wrappers, cartons, and packages like those shown by the exhibits of defendant's packages filed herein, which so resemble those of the plaintiff as to be calculated to induce the belief that defendant's such sauce is that manufactured by the plaintiff, is unfair trading.

"(3) It is thereupon further ordered, adjudged, and decreed that the defendant Ed Bulliard, his agents, servants, and employees, and all holding by, through, or under them, or any of them, be and the same hereby, each and all, are perpetually enjoined and re-

strained from using or employing in connection with the manufacture, bottling, and packaging, advertisement, offering for sale, or sale, of any sauce, the word 'Tabasco,' or any like word, except only the sauce manufactured by plaintiff, and from using or employing the said word 'Tabasco,' or any like word, upon or in connection with any label, wrapper, carton, package, or advertisement, except such as may be used in connection with the sauce manufactured by plaintiff, and from using or employing in connection with the manufacture, advertisement, offering for sale, or sale, of such sauce, bottles, wrappers, cartons, or packages identical with or like those shown in the exhibits herein filed, or any other bottles, wrappers, cartons, or packages so resembling those of the plaintiff as to be calculated to induce the belief that defendant's said sauce is that manufactured by the plaintiff, and that a writ of injunction issue accordingly.

"(4) It is further ordered, adjudged, and decreed that the counterclaim of the defendant be dismissed, and that the plaintiff recover the cost of this proceeding, to be taxed by the Clerk."

See (D. C.) 265 F. page 705.

No appeal was taken therefrom. On November 14, 1925, an amended bill of complaint was filed, in which it was alleged that the respondent had willfully and intentionally violated said injunction by using the word "Tabasco" in its business of manufacturing and selling pepper sauce, the pertinent allegations of the supplemental bill being as follows:

"That defendant has continuously for a long period of time prior to the date of the filing of this supplemental bill offered for sale and sold a pepper sauce manufactured by him and sometimes known as 'Evangeline Sauce,' as 'Tabasco Sauce,' or 'Evangeline Extract of Tabasco Pepper Sauce,' or 'Evangeline Sauce (Tabasco),' or 'Evangeline Extract of Pepper Sauce (Tabasco),' to prospective purchasers and retailers of such sauce, and has called and designated said pepper sauce manufactured and sold by him, as in this paragraph set forth, in correspondence with and invoices sent to prospective purchasers, and retailers of said sauce; that the word 'Tabasco,' in the names by which defendant has offered for sale and sold and called and designated his said sauce, has been in many instances made the most prominent word in the name used for said sauce, by being printed or typewritten in red ink, or in blue or black ink underscored in red, while the remaining words of the name used for said sauce have been printed or typewritten in either blue or black ink.

"V. That plaintiff is informed and believes, and therefore avers, that the defendant for a long period of time prior to the date of the filing of this supplemental bill has inserted or caused to be inserted in newspapers published throughout the country numerous advertisements, all in more or less similar form, specimens of which are attached hereto and filed herewith, marked Exhibits A, B, and C, which advertisements constitute the advertising of the pepper sauce manufactured and sold by defendant as 'Tabasco Sauce,' in that the said advertisements are calculated and intended to deceive and do deceive the readers thereof, so that they believe that the sauce manufactured by defendant is 'Tabasco Sauce'; said advertisements appearing, inter alia, in the issues of the Times-Picayune, published in the city of New Orleans, Louisiana, the Houston Chronicle, published in the city of Houston, Texas, and the Birmingham News, published in the city of Birmingham, Alabama.

"VI. That plaintiff is informed and believes, and therefore avers, that the defendant for a long period of time prior to the date of the filing of this supplemental bill has advertised or caused to be advertised the pepper sauce, manufactured and sold by him, as 'Tabasco Sauce' in various trade journals published and circulated throughout the United States; said advertisements appearing, inter alia, in the issues of the Commercial Bulletin, a trade journal published in Los Angeles, California, and in the Price List, published by Goodman & Beer Co., Inc., of New Orleans, Louisiana.

"VII. That the use of the word 'Tabasco,' as set forth in paragraphs IV, V, and VI hereof, is in violation of and contrary to the decree and injunction of this court heretofore made and issued in this cause, as set forth in paragraphs II and III hereof; that defendant, in advertising, offering for sale, and selling his sauce, as set forth in said paragraphs IV, V, and VI, is advertising, offering for sale, and selling the same as 'Tabasco Sauce,' and is violating said decree and injunction, as well as plaintiff's trade-mark and trade and business rights, and is trading unfairly; that the use of the word 'Tabasco,' in connection with the said sauce manufactured by the defendant, as set forth in said paragraphs IV, V, and VI, is calculated to deceive and does deceive prospective purchasers and consumers of pepper sauce, so that they accept the sauce so manufactured, advertised, offered for sale, and sold by defendant as and for the

sauce of the plaintiff and, the defendant is knowingly, willfully, and intentionally using the word 'Tabasco' in such manner to deceive said prospective purchasers and consumers and for no other reason; that defendant by so doing. is knowingly, willfully, and intentionally infringing upon the plaintiff's trademark and business and trade rights, and upon the good will and reputation of plaintiff, and is trading unfairly; and that the said use of the word 'Tabasco' and the said infringement of plaintiff's trade-mark and other rights and unfair trading- have caused and are now causing plaintiff large pecuniary damage and loss of profits."  .

At the same time, and based upon the same allegations of the violation of the original decree above quoted, complainant filed a petition and obtained a rule against the respondent for civil contempt, alleging the violation of the injunction in the manner indicated.

Respondent has filed a joint answer to the two proceedings, which admits substantially the use of the word "Tabasco" in the manner charged, except that as to certain of the correspondence, invoices, and circulars complained of, which he averred were sent out by an employee without his knowledge. He further alleges in effect that the decree of 1920 was by agreement between the parties changed and modified, so as to permit the use of the word "Tabasco" in the manner which had been done, and hence complainant was without right to prosecute either the supplemental complaint or the rule for contempt. He prays that the bill and rule be dismissed and "in reconvention" for a modification of the original decree to conform to the alleged agreement between himself and the complainant.

The main facts are substantially conceded. There is no question but that the letter of the decree above quoted enjoined the respondent from using the word in any manner in "manufacturing, bottling, packing, advertisements, offering for sale, or sale of any sauce. * * *"

On July 4, 1921, respondent wrote complainant, calling attention to the developments in certain litigation between the complainant and other persons, in which it had been held that the McIlhenny Company had no exclusive right to the use of the word "Tabasco" as a registered trade-mark, and as a result the latter had made agreements with said persons for its use in a restricted sense; the concluding paragraph of respondent's letter reading as follows:  ·

"We are about to sign a contract with a firm of lawyers for reopening our suit. However, if you will make the same agreement with me as you did with the Glasser-Crandell Company to use Evangeline Brand made from Tabasco peppers, I will drop all litigation."

Complainant replied on July 8, 1921, that the matter was being submitted to his lawyers for advice, and on August 16, 1921, wrote respondent as follows:

"My attorneys have been considering your letter of July 4th, in which you request that certain allowances be made you for the use of the word 'Tabasco' on your pepper sauce label. My attorneys have advised that I will make you the following offer:

"1. You must eliminate from your package the word 'Tabasco' as the designation of your sauce, or in any connection with your sauce, excepting only in the phrase 'Made out of Tabasco Peppers,' and this phrase shall not be used, except on a secondary label and in a subordinate way, just as is done by the Glasser-Crandell Company.

"2. You must eliminate also the word 'Tampico,' just as the word 'Tabasco' must be eliminated, and must not use any other word which resembles 'Tabasco' in connection with your sauce.

"3. You must make a radical change in the form of your package, so that it will not resemble the McIlhenny package any more closely than does the Glasser-Crandell package.

"4. The McIlhenny Company will, of course, reserve the right to proceed against you, or any parties claiming your sauce under you, for selling your sauce as 'Tabasco Sauce.' The sauce must not be known as or sold as 'Tabasco' or 'Tabasco Sauce,' or 'Tabasco Pepper Sauce.' "

Respondent accepted the proposition as follows:

"We accept your agreement and will put up our sauce as Evangeline Sauce made from Tabasco peppers. We have made a radical change in our bottle. We now have a dynamite shape bottle; we are mailing you sample to-day. We would thank you to give us acknowledgment on receipt of the bottle. Thanking you for all favors and with personal regards to John Avery."

Subsequently, and on May 23, 1922, the Circuit Court of Appeals for this the Fifth Circuit, handed down its opinion in the case of Trappey et al. v. McIlhenny Co., 281 F. 23, in which it modified a decree of the trial court for the Eastern district of Louisiana, enjoining appellant from using the word in describing a pepper sauce made by them; the

concluding and decretal portion of said opinion on appeal reading as follows:

"Upon the whole case, we think that the complainant was entitled to an injunction restraining the defendant from using the word 'Tabasco' as the name, or as part of the name, of the sauce manufactured and sold by him. The injunction should go to the extent of preventing defendant from using the word 'Tabasco' as the name or description of the sauce manufactured by him, but should not prevent his stating that the sauce is made from Tabasco peppers. Baglin v. Cusenier Co., 221 U. S. 580, 600, 31 S. Ct. 669, 55 L. Ed. 863.

"The decree granting the injunction in this case is affirmed, so far as it enjoins the appellants from using the word 'Tabasco' as the name of the sauce manufactured by them, or in any manner to designate or describe said sauce, or from using the word 'Tabasco' otherwise than to state that the sauce manufactured by appellants is made from Tabasco peppers, said statement to be made in such manner as clearly to distinguish the sauce made by appellants from that manufactured by appellee."

The issues involved there were substantially the same as those raised in this instance, and the decree carries practically the same effect as the agreement between the parties herein, represented by the correspondence above quoted.

[1, 2] Inasmuch as this case was originally commenced and the power of the court invoked for the protection of a civil right, I see no reason why the parties should not be permitted to modify its effect as was done. In fact, both have asked in the present proceeding for additional relief, based upon existing conditions, and I am of the opinion that the decree of May 18, 1920, should be reformed and amended, so as to give effect to the terms of the letter of complainant of August 16, 1921, and the acceptance thereof by respondent of August 19, 1921.

[3, 4] However, the agreement mentioned did not nullify or suspend the operation of the decree of May 18, 1921, in its entirety, and I find that the respondent has knowingly and intentionally violated it by using the word in its literature, advertisements, and in the labels upon the cartons and bottles containing its sauce, in such manner as to deceive the public and to seriously injure the business of the complainant. While some of the invoices and letters offered as exhibits, and in which the product of respondent is referred to as "Tabasco Sauce," may have been written by the clerical help of respondent (and this fact may be considered as a mitigating circumstance in the contempt proceeding), nevertheless I think the respondent is civilly responsible therefor, and, having intentionally deceived the public into purchasing his own product upon the reputation of that of complainant, must respond in damages. For quite a period of time he has placed upon the cartons and bottle labels the phrase "Made from Tabasco Peppers"; but "Tabasco" has been the most conspicuous and prominently used word. The proof shows that the public generally, in buying and using the product, uniformly believes that it is the original article put out by complainant under its tradename. It is not worth while to discuss or refer to the mass of evidence, both oral and documentary, showing this fact, as I think it will clearly appear therefrom that respondent has been guilty of a willful infringement of the trade rights of complainant.

[5] My conclusion is that the respondent should be adjudged guilty of civil contempt, and that he should account to complainant for the profits made by the wrongful use of its trade-name. A proper decree may be presented, referring the matter to a master for the ascertainment and assessment of the damages, and the respondent will appear at the regular June term of this court at Opelousas for the imposition of appropriate penalties for contempt.