## McILHENNY CO. v. BULLIARD.

District Court, W. D. Louisiana, Opelousas Division. July 23, 1928.

No. 22.

Howe, Fenner, Spencer & Cocke, of New Orleans, La., J. S. Clark, of Philadelphia, Pa., and Edw. S. Rogers, of Chicago, Ill., for complainant.

J. M. Grimmet, of Shreveport, La., Emmet Alpha, of New Orleans, La., and Merrick & Schwarz, of New Orleans, La., for respondent.

DAWKINS, J. The nature and history of this case are disclosed more or less in the opinions handed down in former proceedings, reported in (D. C.) 265 F. 705, and (D. C.) 16 F.(2d) 470, and hence will not be repeated here. The matter is now again before the court on exceptions and objections to the findings and recommendations of the special master, to whom it was referred under the decree of June 7, 1926, to ascertain the amount which should be recovered by complainant as profits and damages flowing from the infringement of complainant's trademark.

On March 12, 1927, complainant filed a supplemental bill, charging that since the rendition of the decree of June 7, 1926, respondent had continued to violate the injunction by using the phrase, "Made from tabasco peppers," without accompanying it with the qualifying language set out in that decree, and praying for a further injunction restraining the use of the word "tabasco" for such period as might be necessary to overcome the effect of his conduct. At the same time a motion was filed to punish respondent as for civil contempt for violating the decree of June 7, 1926. By consent, the matter of accounting for the period from the latter date to June 30, 1927, was also referred to the master, evidence was heard and the amount of profits and damages was considered by the master in anticipation of the ruling by the court upon the issue of infringement and violation of the said decree during the latter period.

On April 2, 1928, the master filed his report. The accounting was divided into two parts; the first covering operations of respondent prior to July 1, 1926, and the second from the latter date to June 30, 1927. The amount of profits for the first period was by stipulation fixed at $5,017.50, and for the latter the master found from the evidence that a profit of $6,435.40 had been made, and recommended that plaintiff have judgment for said amount, with legal interest from date of his report. Damages were denied, for the reason that in his opinion the evidence did not support a recovery.

Exceptions were taken by complainant to the refusal of the master to award damages, and by respondent to the awarding of profits for the second period. Respondent also opposed the motion by complainant for a modification of the injunction, so as to deny him the right to use the word "tabasco" in connection with his pepper sauce, for a limited period, to counteract the violation of the decree of June 7, 1926. Complainant also filed a motion or amendment, asking that respondent be denied the right to use the word "Evangeline" in connection with his pepper sauce, and respondent filed a similar motion, praying that the court eliminate from its decree of June 7, 1926, the requirement that, in the use of the phrase "Made from tabasco peppers," the same should be accompanied with distinguishing words, to show that it was not the original pepper sauce manufactured by the complainant for a long period of years.

Additional evidence was taken in open court and the case is now to be considered upon the following propositions, to wit:

(1) Should complainant be awarded damages for the period prior to June 7, 1926?

(2) Was there a violation of the decree of June 7, 1926, and, if so, (a) does the record support the recovery allowed by the master for profits from that date to June 30, 1927; and (b) should it be allowed damages for that period also?

(3) Should the decree of June 7, 1926, be modified, so as (a) to deny respondent the right to use the word "tabasco" altogether, for a limited period; and (b) should he also be required to eliminate the word "Evangeline" in connection with said sauce?

(4) Should the prayer of respondent to modify the decree of June 7, 1926, so as to

eliminate the qualifying words required thereby in the use of the phrase "Made from tabasco peppers," be granted?

There is the additional question of whether or not the respondent should be adjudged guilty of contempt, which was submitted along with the exceptions to the master's report and upon the evidence adduced at the hearing before the court.

1. The court has carefully examined the evidence offered in support of the claim for damages, and is constrained to agree with the master that it is insufficient upon which to base a judgment for actual damages or the loss of business. It is true that a number of hotels and railroads are using the sauce of respondent, who formerly were customers of complainant; but there is nothing to show what proportion of the total sales were to these customers, and any attempt to fix the same would be the merest guess. I am aware of the difficulties with which complainant was confronted in view of the fact that respondent, like complainant, sells a considerable portion of his product to jobbers, and it would be necessary to trace the purchases to the consumer through those sources; but such difficulties cannot serve to relieve the necessity for reasonable certainty in discharging the burden of proof resting upon the complainant.

However, the Act No. 49 of the Legislature of Louisiana, for the year 1898, in my opinion, has enlarged or supplemented the common-law right of recovery for actual damages, such as result from the making of sales by the infringer, which the complainant must show he could have made. It provides:

"Sec. 5. Be it further enacted, etc., Every such person, association or union adopting or using a label, trade-mark, term, design, device or form of advertisement as aforesaid, may proceed by suit to enjoin the manufacture, use, display or sale of any counterfeits or imitations thereof, and all courts of competent jurisdiction shall grant injunctions to restrain such manufacture, use, display or sale and *may award the complainant in any such suit damages resulting from such manufacture, use, sale or display as may be by the said court deemed just and reasonable,* and shall require the defendants to pay to such person, association or union, all profits derived from such wrongful manufacture, use, display or sale; and such court shall also order that all such counterfeits or imitations in the possession or under the control of any defendant in such cause be delivered to an officer of the court, or to the complainant, to be destroyed." (Italics by the writer.)

My view is that the Legislature, realizing the difficulty of proof in such cases, intended to authorize the court in its discretion to determine what should be a proper recovery upon a "just and reasonable" consideration of all the circumstances, without being confined to the exactness and certainty of showing otherwise required in such cases. This appears to be borne out by the decisions of the Louisiana Supreme Court. See Cusimano & Co. v. Olive Oil Importing Co., Ltd., 114 La. 312, 38 So. 200; Coca-Cola Co. v. Vivian Ice, Light & Water Co., 150 La. 445, 90 So. 755.

The power of a federal court to enforce a right such as this, given by a state statute, seems to be settled. Coty v. Prestonettes, Inc. (C. C. A.) 285 F. 501; In re McNiel 13 Wall. 236, 20 L. Ed. 624, with Rose's notes thereon, vol. 7, p. 592 et seq. But the state statute cannot give relief or enforce such rights as to transactions happening beyond its territorial limits. Coty v. Prestonettes, Inc., supra; Rehbein v. Weaver et al. (C. C.) 133 F. 607. In the present case there has been no separation of the business done in Louisiana from that transacted in other states, nor has it been shown what proportion of its former customers, or probable new ones, have been induced to handle respondent's product upon the belief that they were getting complainant's article, were located in Louisiana. In other words, my view is that it is not possible to separate the evidence as to matters within and without the state, so as to enable the court to give a judgment for general damages under the Louisiana statute, based upon all the circumstances, as it might otherwise do if they had all occurred within the state. It follows, therefore, that the ruling and recommendation of the master as to damages will have to be sustained.

2. It is admitted that the respondent did not obey that part of the decree of June 7, 1926, requiring him to accompany the use of the phrase "Made from tabasco peppers" with the qualifying language, "But this is not the old, established tabasco sauce, which is the pepper sauce manufactured for many years by McIlhenny Company and its predecessors at New Iberia, Louisiana, or a statement similar thereto, which shall clearly and unmistakably distinguish the sauce manufactured and sold by defendant from that manufactured by McIlhenny Company," etc.

It is my opinion, after a careful exami-

nation of the whole record in this case, beginning with the proceedings started in 1918, that the respondent set out with the purpose of availing himself of the benefits which the use of the word "tabasco" in connection with pepper sauce had acquired as the result of long years of manufacture by complainant, and from the fact that his plant and operations were located and carried on in virtually the same locality as that of complainant. This is demonstrated, first, by the fact that originally the packages, cartons, etc., were very similar and scarcely distinguishable from those of complainant, except for the name of the manufacturer (which latter fact it would appear from the evidence the average consumer or dealer has not stopped to consider, so long as he thought it was "tabasco sauce"); and, second, by the persistence with which respondent has held to and insisted upon the use of the word "tabasco." If the product had merit sufficient to sustain it, it would seem that he could have had just as good results by calling it "Bulliard's Pepper Sauce," or any other name without the use of the word "tabasco"; but he has, as above stated, intended that the attention of the public should be prominently and easily directed to the word "tabasco," which could have been but for one purpose; that is, to have it believe that the purchasers were getting tabasco sauce. The existence of this desire on the part of the public I believe the record discloses to be due to complainant's efforts, and its use of the word "tabasco" as a trade-name to distinguish its sauce in building up its business over a long period of years before respondent or any one else had entered the field and begun to manufacture sauce from tabasco peppers.

It is true that respondent, either as the result of this litigation or of agreement, has modified the use of the word from time to time, but it has been in such way that in my opinion the public has paid little attention to either the shape of the bottle, carton, etc., or to the addition of the word "Evangeline," so long as the product was referred to, bought, and sold as "tabasco sauce." In view of this situation, which has been created by the wrongful acts of respondent, I believe the court is justified and required to go much further than it ordinarily would in attempting to repair the injury which has been done, by compelling him to clearly disclose to the trade that his article is not that of complainants, and to prohibit him from getting the benefit of complainant's efforts. Hence, if the requirement of the decree of June 7, 1926, was somewhat drastic, the same was

due to his own fault, and was, in the opinion of the court, the only effective way in which the consequences of his wrongful conduct could be overcome. My conclusion is that the decree went no further than was necessary under the circumstances, and, since it was admittedly violated, the complainant is entitled to such profits and damages as it may have established.

2. (a) I shall not attempt to analyze the evidence upon which recovery was allowed and recommended by the master for profits for the infringement over the period from July 1, 1926, to June 30, 1927, but suffice it to say that the same, in my opinion, is fully sustained by the evidence. Respondent, in the face of the fact that this litigation was pending, and that he probably would be called upon to account for his wrongful acts, kept his records in such condition that it was not possible to clearly ascertain therefrom the amount of his profits, and I think the manner in which the master determined them is justified under the circumstances.

2. (b) What has been said about the damages prior to July 1, 1926, is equally applicable to the latter period; i. e., the evidence is not such that the court can fix the amount of damages.

3. (a) As above indicated, I think the course of conduct of the respondent in this case has been such as to constantly keep before the public the idea that his product was the tabasco pepper sauce manufactured by complainant, and that in order to overcome this condition as far as possible he should be denied the right altogether to use the word "tabasco" in connection with the manufacture of his pepper sauce, for a period of five years, and that the former decree should be amended accordingly.

3. (b) The motion to amend the decree, so as to prohibit respondent from using the word "Evangeline" in connection with his pepper sauce, was made during the hearing before the court upon the exceptions to the master's report and the rule for contempt, so that there was no reasonable opportunity for respondent to answer, or to go into this question properly. Hence the amendment was denied, but the right to urge the same later, should circumstances justify that course, will be reserved.

4. The issue raised by the prayer of respondent for the elimination of the distinguishing words which were required to be used in connection with the phrase "Made from tabasco peppers" has already been disposed of, and on the modification of the decree, so as to deny him the right to use the

word "tabasco" altogether for a period of five years, will be unnecesary, but thereafter complainant may apply to have the same reinstated should the circumstances so require.

### The Rule for Contempt.

As previously indicated, respondent admits refusal to comply with that part of the decree of June 7, 1926, requiring him to use the distinguishing language; but he seeks to justify this course by relying upon the advice of his counsel. This is no defense to the charge of contempt, but may be considered by the court in mitigation of punishment. Calculagraph Co. v. Wilson (C. C.) 136 F. 196; Victor Talking Machine Co. v. Leeds (C. C.) 150 F. 147; In re Munroe (D. C.) 210 F. 326; National Corporation v. Bartram Hotel Co. (D. C.) 263 F. 250; Id. (C. C. A.) 269 F. 974. Respondent's recourse, if he thought the decree went too far, was to apply to the court, through proper proceedings, for a modification, and not to rely on the advice of counsel and violate its plain letter. My opinion is that respondent was guilty of contempt.

Taking all the circumstances into consideration, including the expense and trouble to which the complainant has been put in this case, I think the court justified in imposing a fine of $5,000, $2,500 thereof to be paid to complainant to cover its expenses and costs, and the remainder to be considered as punishment for the willful violation of the court's decree.

Sentence upon the conviction of contempt under the decree of June 7, 1926, will be held in abeyance to await the future conduct of respondent.

A decree in accordance with the views expressed herein may be presented.