HOFFMANN–LA ROCHE Inc.

v.

SCHWEGMANN BROS. GIANT
SUPER MARKETS et al.

Civ. A. No. 3955.

United States District Court
E. D. Louisiana, New Orleans Division.

June 11, 1954.

Lorentz & Stamler, Joseph H. Stamler, Newark, N. J., Henican, James & Cleveland, Murray F. Cleveland, New Orleans, La., for plaintiff.

Wisdom & Stone, Saul Stone, Paul O. H. Pigman, New Orleans, La., for defendants.

WRIGHT, District Judge.

Plaintiff seeks to have defendants punished for contempt of the injunction issued by this court restraining them from violating the Louisiana Fair Trade Act. Defendants admit sales under the fair trade price via prescriptions issued by physicians. They contend that since such merchandise is not sold under the label or trade-mark of the manufacturer, there is no contempt of the injunction nor violation of the Fair Trade Act.

The matter having come on for hearing, and considering the evidence, arguments and briefs presented by both sides, the court now makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Hoffmann-La Roche Inc., a New Jersey corporation, has been for many years, and now is a manufacturer and distributor of pharmaceutical preparations and products. Its commodities are sold to the public by retail pharmacists throughout the United States and in foreign countries, in some cases on prescription only, and in others over-the-counter.

2. Schwegmann Brothers Giant Super Markets is a commercial partnership domiciled in the Parish of Orleans, State of Louisiana; and John G. Schwegmann, Jr., Paul S. Schwegmann, Anthony Schwegmann, Wilfred J. Meyer, Charles Acquistapace, Ernest Barrios and O'Neil Barrios are the partners comprising said partnership.

3. By virtue of promotional activities by Hoffmann-La Roche Inc., the reputation of the producer and the intrinsic merits of the commodities, the said commodities and the trade names by which they are known have acquired an excellent reputation with physicians and pharmacists; and Hoffmann-La Roche Inc., its distributors and the retailers of its products enjoy a profitable business from the sale of said products.

4. The products of Hoffmann-La Roche Inc. are commodities supported by research, development, and scientific investigation achieved only after great expenditure of time and money, and thereafter are manufactured under rigid controls and are then ready for distribution to doctors and pharmacists throughout the country.

5. The products of Hoffmann-La Roche Inc. are not advertised directly

to the lay public. The products are promoted directly to the physician, other licensed practitioners in the healing arts, pharmacists, and hospital personnel.

6. The promotional activities and advertising methods used by Hoffmann-La Roche Inc. are the usual methods of promotion of ethical products and are well known to and accepted by physicians and other licensed practitioners in the healing arts, pharmacists, and hospital personnel, and conform with the requirements of the Federal Food, Drug and Cosmetic Act and other applicable Federal and State laws respecting the promotion of professional pharmaceutical products.

7. Hoffmann-La Roche Inc. employs professional service representatives, known to the professions and trade as "detail men." They regularly call upon physicians and other licensed practitioners in the healing arts, pharmacists and hospital personnel, and acquaint them with the products and the trade names by which the products are known, the ingredients contained in the named products, the properties thereof, the indications, the contraindications, the advantages over competing products and the directions for use. All of this is for the purpose of convincing the physicians and other licensed practitioners in the healing arts, pharmacists and hospital personnel, that the products are more desirable than the products of other manufacturers. It is also for the purpose of impressing upon the physicians and other licensed practitioners in the healing arts, pharmacists and hospital personnel, the importance of prescribing or otherwise ordering the products by their trade names and persuading them that it is for the best interests of the patient that the products be so prescribed.

8. In 1953 Hoffmann-La Roche Inc. spent in excess of $4,500,000 in direct "detailing", in advertising in professional journals, professional mailings and distribution of literature and samples, all of which is accomplished in each such instance by direct reference to the trade name of the product which thus becomes well and favorably known to physicians, other licensed practitioners in the healing arts, pharmacists and hospital personnel.

9. As a result of the foregoing promotional activities, the trade names which identify the products of Hoffmann-La Roche Inc. have become known to the physicians and other licensed practitioners in the healing arts, pharmacists and hospital personnel, and have become the means whereby the physicians and other licensed practitioners in the healing arts, pharmacists and hospital personnel, are assured of the reliability and excellent quality of the products with which the trade names are associated and of the manufacturer responsible for them.

10. Hoffmann-La Roche Inc. is the owner of the registered trade names Gantrisin, Sedulon and Asterol, and has the sole right to the use of each of these trade names. Clinical papers and reports in professional journals refer to the aforementioned products by their trade names, Gantrisin, Sedulon, and Asterol, respectively. Gantrisin, Sedulon and Asterol are delivered to the retailer properly labeled under applicable Federal and State Food and Drug Statutes and regulations, and each of the labels carries the required legend: "Caution: Federal law prohibits dispensing without prescription."

11. Each pharmacist, when Gantrisin, Sedulon or Asterol is ordered by name by prescription, is required by law to deliver Gantrisin, Sedulon or Asterol, respectively, and no other drug or medicine, and to retain the prescription for a statutory period of years in a file established for that purpose. The statutory period, according to the Louisiana Pharmacy Law, is five years. Each of the pharmacists employed by Schwegmann delivers Gantrisin, Sedulon or Asterol, as the case may be, and no other drug or medicine when the prescription presented by the customer calls for any one of said named products. The trademark "HLR" on drug products, and the

trade-mark "Roche" are owned by Hoffmann-La Roche Inc., who has the sole right to the use thereof. Each Gantrisin tablet in Plaintiff's Exhibits 7 and 8 is impressed with the Hoffmann-La Roche Inc. trade-mark "HLR".

12. On April 20, 1953 Hoffmann-La Roche Inc. filed proceedings against the defendants, pursuant to the Louisiana Fair Trade Law, which action resulted in a judgment of injunction rendered on May 15, 1953 against each of the defendants and their agents, servants, employees and attorneys, and all persons acting in aid of or in conjunction with them. The partnership defendant, and each individual defendant, was duly served with a certified copy of the judgment on May 18, 1953.

13. On or about January 30, 1954, Schwegmann Brothers Giant Super Markets accepted a prescription calling for 100 Gantrisin tablets, and in the ordinary course of business, the defendants, and each of them, through their employees, filled said prescription, and sold and delivered to a purchaser in the ordinary course of business the product called for in the prescription for the sum of $3.58 (the said sale having been made under Prescription No. 105,663). In filling this prescription, defendants were aware of the trade name of the product as called for in the prescription. The Fair Trade price for 100 Gantrisin tablets was $4 at the time of the filing of the original complaint for an injunction and continues to this date to be $4.

14. On or about February 1, 1954, Schwegmann Brothers Giant Super Markets accepted a prescription calling for 100 Gantrisin tablets, and in the ordinary course of business, the defendants, and each of them, through their employees, filled said prescription, and sold and delivered to a purchaser in the ordinary course of business the product called for in the prescription for the sum of $3.58 (the said sale having been made under Prescription No. 106,036). In filling this prescription, defendants were aware of the trade name of the product as called for in the prescription and

the trade name of the product as filled in the prescription.

15. On or about February 13, 1954, Schwegmann Brothers Giant Super Markets accepted a prescription calling for 1½ ounces of Asterol powder and one ounce of Asterol ointment, and in the ordinary course of business, the defendants, and each of them, through their employees, filled said prescription and sold and delivered to a purchaser in the ordinary course of business the products called for in the prescription for the sums of $1.05 and $1.04, or a total of $2.09 (the said sale having been made under Prescription No. 109,998 and No. 109,997). Upon receipt of the prescription, defendants replaced the labels on original trade packages, which labels contained the trade name Asterol, the trade name Roche, and the trade name Hoffmann-La Roche Inc., with prescription labels. In filling this prescription, defendants were aware of the trade name of the products as called for in the prescription and the trade name of the products as filled in the prescription. The Fair Trade price for 1½ ounces of Asterol powder was $1.35 and the Fair Trade price for one ounce of Asterol ointment was $1.20 at the time of the filing of the original complaint for an injunction, and continue to this date to be $1.35 and $1.20, respectively, or a total of $2.55.

16. On or about February 13, 1954, Schwegmann Brothers Giant Super Markets accepted a prescription calling for 4 ounces of Sedulon syrup, and in the ordinary course of business, the defendants, and each of them, through their employees, filled said prescription, and sold and delivered to a purchaser in the ordinary course of business the product called for in the prescription for the sum of $0.94 (the said sale having been made under Prescription No. 110,039). Upon receipt of the prescription in the above instance, defendants removed Sedulon syrup from a bulk trade package container which had the trade name Sedulon, the trade name Roche, and the trade name Hoffmann-La Roche Inc. on its la-

bel and placed the Sedulon syrup in a dispensing container upon which defendants placed a prescription label. In filling this prescription, defendants were aware of the trade name of the product as called for in the prescription and the trade name of the product as filled in the prescription. The Fair Trade price for 4 ounces of Sedulon syrup was $1 at the time of the filing of the original complaint for an injunction and continues to this date to be $1.

17. At the time of sale, the bulk containers from which the Gantrisin tablets were dispensed in both instances hereinabove referred to in Paragraph 13 and 14 had affixed thereto labels like Exhibit Plaintiff 15. The trade names Gantrisin, Roche and Hoffmann-La Roche Inc. appeared on the said labels. The bulk container from which the Sedulon was dispensed had affixed thereto a label like Exhibit Plaintiff 16. The Asterol ointment and the Asterol powder had affixed thereto labels like Plaintiff's Exhibits 13 and 14, respectively. In the case of the Asterol ointment and the Asterol powder the original labels were removed by the pharmacists at the time of sale and the Asterol ointment and the Asterol powder were delivered to the customer in the original containers furnished by Hoffmann-La Roche Inc. In all cases a prescription label furnished by the defendants was affixed to the dispensed container.

18. Gantrisin tablets, Asterol ointment, Asterol powder, and Sedulon syrup, according to law, can be dispensed only pursuant to prescription. A prescription is an order for a drug, chemical or medicine, or combination thereof, either written or given orally to a registered pharmacist by a licensed physician, dentist, or veterinarian, to be filled, compounded, or dispensed by a registered pharmacist in a registered pharmacy, and to be preserved on file as required by law. When any prescription calls for Gantrisin tablets, Asterol ointment, Asterol powder, or Sedulon syrup, then defendants fill that prescription by dispensing the product identified by that trade name and no

other product. When a prescription calls by trade name for a product other than Gantrisin, Asterol or Sedulon, then defendants do not dispense Gantrisin, Asterol, or Sedulon.

19. There is no medicine sold generally by any other drug manufacturer which contains the identical ingredients in the identical proportions as Asterol, Gantrisin, and Sedulon, respectively. Manufacturers, other than plaintiff, manufacture and distribute under their own trade names or labels products having the same therapeutic properties as Gantrisin, Asterol and Sedulon. The chemical composition and characteristics of competitive prescription products of other drug manufacturers differ from the chemical composition and characteristics of Gantrisin, Asterol and Sedulon. The trade names Gantrisin, Asterol and Sedulon under which plaintiff's products are sold do not reflect their chemical composition and characteristics. Many other manufacturers produce and sell products which are in fair and open competition with Gantrisin, Asterol and Sedulon.

20. Defendants' actions in selling plaintiff's products in the instances under consideration were taken upon advice of their counsel. Each prescription upon which this proceeding is based was given by a doctor for an alleged patient whom he had not examined, but each prescription was filled in the ordinary course of business.

21. As will appear from Plaintiff's Exhibit 1 (paragraph 3) the trade-marks, brands, labels and names under which the products of Hoffmann-La Roche Inc. are sold have a substantial value. As will appear from Plaintiff's Exhibit 1 (paragraph 7) the selling of Hoffmann-La Roche Inc. products at less than Fair Trade prices has injured and will continue to injure Hoffman-La Roche Inc. Retailers who are unable profitably to compete with such price cutting practices harbor resentment against the practices, and their ill will is transferred to the Hoffmann-La Roche Inc. products themselves, with resulting pecuniary loss to Hoffmann-La Roche Inc. Not only will

retailers then refuse to feature the sale of Hoffmann-La Roche Inc. products, and turn to the products of other manufacturers, but they will also be unwilling to carry a full line of Hoffmann-La Roche Inc. products, on which the consuming public and the medical and related professions have come to rely.

22. Defendants have placed advertisements in New Orleans newspapers containing the following statements, among others:

(a) *September 8, 1952—"Price-fixing 'Fair Trade' is the law of the land. But at Schwegmann Bros., in spite of manufacturers' threat of court action and jail, we are now selling thousands of price-fixed 'Fair Traded' necessities of life and sickness, for less."*

(b) *September 15, 1952—"We plead guilty to the 'crime' of selling every item, every day at the lowest possible price. Our contempt for the un-American price fixing 'Fair Trade' system is only exceeded by our determination to save more money for our customers."*

(c) *September 22, 1952—"We defy any manufacturer to stop us from giving our customers these benefits."*

(d) *November 3, 1952—"There will be no change in our policy of pricing all of our merchandise at the very lowest prices every day. We will fight every manufacturer who drags us into the Courts for the purpose of forcing us to increase our prices; we will fight the unjust price-fixing laws through the United States Supreme Court again if it becomes necessary."*

23. Defendants have sought to induce customers to secure from their physicians prescriptions covering products which, under applicable law, may be sold without prescription, including the Hoffmann-La Roche Inc. over-the-counter product Syntrogel tablets. This appears from the oral testimony and from Plaintiff's Exhibit 12.

24. When the pharmacists employed by the defendants refill prescriptions calling for products by trade name, including Gantrisin, Asterol and Sedulon, the pharmacists check the original prescriptions, which prescriptions are preserved in their files, and ascertain therefrom the trade names of the products to be dispensed, and refill the prescriptions with the trade name products.

25. The judgment herein enjoins defendants from selling certain products manufactured by plaintiff "at prices less than those stipulated in contracts entered into by plaintiff with other retailers pursuant to the Louisiana Fair Trade Law, or at prices less than those which may be shown in any future minimum retail price schedules issued by plaintiff in connection with such contracts." The judgment, however, does not include prices stipulated in the contracts with other retailers, nor does it include the future minimum retail price schedules.

### Conclusions of Law

1. The purpose of the Louisiana Fair Trade Act, as set forth in the original title of Louisiana Act 13 of 1936, LSA—R.S. 51:391 et seq., is:

"To protect trade mark owners, distributors and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trade mark, brand or name."

2. The Louisiana statute, the Illinois statute, and the New Jersey statute dealing with Fair Trade are the "old type" statutes. The statutes are substantially the same. The Illinois statute was construed by the United States Supreme Court in Old Dearborn Distributing Co. v. Seagrams-Distillers Corp., 1936, 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476, which unanimous opinion is binding upon this Court, and in which the United States Supreme Court construed the Fair Trade statutes as not permitting the sale of a Fair Traded product at less than the minimum resale price when the sale is made by utilizing the good will of the trade-mark or name of the product.

3. Distinctive trade-marks, labels and brands are legitimate aids to the creation or enlargement of good will. Old Dearborn Distributing Co. v. Seagrams-Distillers Corp., supra.

4. The statutory aim of the Fair Trade Act was to protect not only trade-mark owners, but also distributors. Port Chester Wine & Liquor Shop v. Miller Bros. Fruiterers, Inc., 1939, 253 App. Div. 188, 1 N.Y.S.2d 802, affirmed, 1939, 281 N.Y. 101, 22 N.E.2d 253; Schwegmann Bros. Giant Super Markets v. Eli Lilly & Co., 5 Cir., 205 F.2d 788, at page 791.

5. The manufacturer's good will is properly protected by the Fair Trade Act. Eli Lilly & Co. v. Schwegmann Bros. Giant Super Markets, D.C., 109 F. Supp. 269, affirmed 5 Cir., 205 F.2d 788.

6. When a purchaser requests an article by trade name, the seller undertakes to guarantee to the purchaser that what is delivered is the named product. Kurris v. Conrad & Co., 1943, 312 Mass. 670, 46 N.E.2d 12; Jolly v. C. E. Blackwell & Co., 1922, 122 Wash. 620, 211 P. 748; 46 Am.Jur., verbo "Sales", Sec. 328, p. 509.

7. In a contempt proceeding, in deciding whether an injunction has been violated, it is proper to observe the objects for which the relief was granted, and to find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded. Champion Spark Plug Co. v. Sanders, D.C.E.D.N.Y.1952, 102 F.Supp. 340; John B. Stetson Co. v. Stephen L. Stetson Co., 2 Cir., 1942, 128 F.2d 981; Phillippe v. Window Glass Cutters League of America, D.C.Ark. 1951, 99 F.Supp. 369.

8. An injunction cannot be collaterally attacked in contempt proceedings; but it is settled law that unless an injunction is void its propriety must be tested by appeal and not by disobedience. Colgrove v. U. S., 9 Cir., 1949, 176 F.2d 614. The belief, the motive, or the intent of the defendants is no defense. Morse-Starrett Products Co. v. Steccone, 9 Cir., 1953, 205 F.2d 244. Even honestly mistaken conceptions of the right to do acts amounting to a contempt will not relieve the defendants. Bate Refrigerating Co. v. Gillett, C.C.N.J.1887, 30 F. 683. The good faith of the defendants is not in issue. Evans v. International Typographical Union, D.C.Ind.1948, 81 F.Supp. 675. The moral intent of the defendants is not in issue on the question of whether the judgment has been defied. Such moral intent may serve to mitigate the punishment. In re Braun, D.C.Pa.1919, 259 F. 309. Advice of counsel, honestly given, may serve to mitigate the punishment, but is no defense to a charge of civil contempt. McIlhenny Co. v. Bulliard, D.C.La.1928, 33 F.2d 978.

9. Upon specific request for a named Fair Traded, trade-marked product, the trade-mark owner's good will is involved and a retail seller may not then remove the trade-mark and thereby avoid liability under the Fair Trade laws.

10. Awareness by the customer of the name of the drug in his prescription is not an essential factor in determining whether or not the trade name of the manufacturer is utilized in selling a Fair Traded product. The good will established in prescription drug trade-marks, brands and names is inseparably bound with prescriptions which physicians write for their patients. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161; Ross-Whitney Corp. v. Smith Kline & French Laboratories, 9 Cir., 1953, 207 F.2d 190; Burroughs, Wellcome and Co. v. Thompson and Capper, 1904, 1 Chancery 736.

11. No Federal or State law or regulation requires the removal of the trade name of a prescription drug. Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq.; Louisiana Food, Drug and Cosmetic Law, LSA–Revised Statutes of 1950, Title 40, § 601 et seq.; and Louisiana Pharmacy Law, LSA–Revised Statutes of 1950, Title 37, § 1171 et seq.

12. The mere removal by the defendants, at the time of sale to a con-

sumer, of the trade-marks, labels, brands or name of the manufacturer is no defense to an action for contempt where the sale is made at less than the legally established Fair Trade price, after receipt of an order for the product by specific trade name; and such action violates an injunction which enjoins the defendants from selling commodities of the manufacturer "bearing the trade-marks, labels, brands or name" of the manufacturer. It is not essential, under such circumstances, that the product or container physically bear the trade-mark, label, brand or name of the manufacturer at the moment of delivery. Old Dearborn Distributing Co. v. Seagrams-Distillers Corp., supra; Pinesbridge Farm, Inc., v. Bloomingdale Bros., Inc., 1941, 176 Misc. 179, 26 N.Y.S.2d 1005; Johnson & Johnson v. Weissbard Bros., 1937, 121 N.J. Eq. 585, 191 A. 873, 874.

13. Rule 65(d) of the Federal Rules, 28 U.S.C.A., requires that every order granting an injunction be specific in terms and describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained.

14. The judgment here, in granting the injunction, does not set out the minimum prices under which the drugs in question are not to be sold. The reference in the judgment to the contracts with other retailers in which those minimum prices are incorporated cannot make those minimum prices binding on these defendants. Rule 65(d) F.R.C.P; Hartford-Empire Co. v. United States, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322; Russell C. House Transfer & Storage Co. v. United States, 5 Cir., 189 F.2d 349; Mayflower Industries v. Thor Corp., 3 Cir., 182 F.2d 800.

15. Plaintiff will prepare and submit to the court a form of judgment which in all respects complies with the requirements of Rule 65(d) to replace the judgment found unenforceable herein.

Petition to punish for contempt denied.